STATE of Arkansas *v.* Michael HARMON

CR 03-135                                    113 S.W.3d 75

Supreme Court of Arkansas
Opinion delivered June 12, 2003

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellant.

*Dale W. Finley*, for appellee.

ROBERT L. BROWN, Justice. This appeal by the State of Arkansas presents this court with the issue of whether *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002), applies to a traffic stop made for the ulterior motive of searching the defendant's vehicle and the defendant himself for drugs. We agree with the State that the circuit court erred in suppressing the drugs taken from appellee Michael Harmon, and we reverse the order of the circuit court and remand for further proceedings.

The facts are taken from the testimony presented at the suppression hearing. On the afternoon of August 28, 2002, Officer Chris Goodman, an undercover narcotics officer with the Russellville Police Department, was surveilling a suspected drug house on State Highway 124. Officer Goodman was in plain clothes and in an unmarked police car that had no siren or police lights. He witnessed Michael Harmon drive up to the house on Highway 124 in a silver Nissan pickup truck, then go into the house, emerge five minutes later, and drive off. Officer Goodman suspected that Harmon had just engaged in a drug transaction and wanted to stop Harmon to investigate that matter if possible. Officer Goodman followed Harmon in his unmarked car.

As he followed Harmon, Officer Goodman noticed that the right brake light on Harmon's truck was not working. Because he was driving in an unmarked car with no siren or police lights, Officer Goodman could not perform a traffic stop. According to Officer Goodman's testimony, he followed Harmon, hoping that "just maybe he would lead me to another house or something else." Officer Goodman's plan was to follow Harmon to the city limits, and if Harmon pulled over, Officer Goodman would approach him, confront him with the traffic violation, and inquire about drugs.

Before reaching the city limits, Harmon pulled into a PDQ store by Interstate 40, and Officer Goodman pulled in behind him. At this point, Officer Goodman testified,

> I identified myself to him with my badge and gun. I told him who I was and that I was going — I was conducting a traffic stop on him. I just didn't have the blue lights for his brake light being out and that I had been observing where he was coming from.

To make Harmon "more comfortable" and to demonstrate to him that he was, in fact, a police officer, Officer Goodman called a uniformed Russellville police officer to the scene. Officer Goodman then performed a series of routine checks on Harmon. He testified that during the checks, Harmon was "extremely nervous." The police officer further testified that after he ran the checks, he returned Harmon's paperwork to him and informed him that he was giving him a verbal warning for driving with a broken brake light.

Immediately following the warning, Officer Goodman asked if he could search Harmon's vehicle. Harmon said, "Go ahead." The police officer testified that Harmon was "fidgety." He then asked for consent to search Harmon's person. Harmon agreed. Officer Goodman found two small baggies containing methamphetamine in Harmon's right front jeans pocket. He seized the drugs and arrested Harmon. Harmon was later charged with possession of methamphetamine.

Harmon moved to suppress the results of the search on the basis that this was a pretextual stop in violation of *Sullivan v. State*, *supra*. During the ensuing suppression hearing, Officer Goodman testified extensively about his intent in following Harmon. He

testified that he normally did not do anything except give a warning to someone with a broken brake light. He further admitted on cross-examination that, as a narcotics officer, he normally would not even give warnings for minor traffic violations like broken brake lights.

Officer Harmon also admitted that he did not have probable cause to stop Harmon for a drug offense. He agreed on cross-examination that he would not have followed Harmon, or stopped him, but for his observation that Harmon had entered and left a suspected drug house.

The circuit court agreed with Harmon and suppressed the drugs seized as fruit of an illegal search. The court ruled, however, that Harmon had voluntarily consented to a search of his person.

■ The State has now appealed the suppression ruling. Under Ark. R. App. P.—Crim. 3(b) and (c), the State is authorized to appeal a criminal case when the Attorney General, after inspecting the record, is satisfied that the circuit court committed error prejudicial to the State, and that review by this court is necessary to ensure the correct and uniform administration of justice. *See also State v. Stephenson*, 340 Ark. 229, 9 S.W.3d 495 (2000).

■ When gauging whether this court has jurisdiction over a State appeal, this court has drawn a distinction between state appeals involving application of the law to particular facts and state appeals involving interpretation of the law. *See, e.g., Guthrie v. State*, 341 Ark. 624, 19 S.W.3d 10 (2000). In the case before us, though, the State's claim is not that the circuit court applied the law incorrectly to the facts before it but rather that the court interpreted the law wrongly, and then applied that flawed interpretation of the law to suppress the seized drugs. The arguments of counsel before the circuit court dealt exclusively with whether our *Sullivan* decision should be interpreted so broadly as to apply to this case. The circuit court's order states that "[t]he court feels that the actions of the officer and his testimony fall within the prohibition of the recent State of Arkansas v. Kenneth Andrew Sullivan that the Supreme Court delivered in May of this year." Hence, the outcome of this appeal requires the interpretation of the Arkansas Constitution and our criminal case law. The result of such an interpretation will have widespread ramifications,

because the question presented calls on this court to determine whether we will invalidate pretextual stops under our *Sullivan* decision. Based on this analysis, we will accept jurisdiction of this State appeal.

The State's sole argument is that our *Sullivan* decision expressly does not apply to pretextual stops, but only to pretextual arrests. In support of this contention, the State relies on Footnote 1 from our decision which reads:

> Our cases have not equated pretextual stops with pretextual arrests due to the different level of police intrusion involved with a traffic stop as opposed to a full custodial arrest. The intrusiveness of an arrest warrants inquiry into an officer's subjective intentions.

*Sullivan*, 348 Ark. at 652 n.1, 74 S.W.3d at 218 n.1 (citations omitted). This pronouncement, the State contends, leaves little doubt that pretextual stops are not covered by our holding in *Sullivan*, and the circuit court's ruling that they are was error.

Harmon responds and focuses his argument, not on the validity of the stop itself, for "no one objects to being told that his tail light is not working," but on the use of the stop by Officer Goodman as an excuse to gain consensual access to Harmon's truck and person. He also attempts to cast the issue as essentially a pretextual arrest and argues in this regard that the stop was tantamount to an arrest because the officer showed him his weapon, told him where to stand, detained him four minutes while a uniformed officer arrived on the scene, and requested to search him at a time when he was "extremely nervous." Harmon contends that our *Sullivan* decision will essentially be nullified by a holding for the State in this appeal, because police officers will simply begin calling their detentions "stops" and will give only verbal warnings for violations.

■ This court has recently clarified our standard of review for a circuit court's denial of a motion to suppress evidence:

> Our standard is that we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court.

*Davis v. State,* 351 Ark. 406, 413, 94 S.W.3d 892, 896 (2003) (citing *Ornelas v. United States,* 517 U.S. 690 (1996)). In *Davis,* we clarified the standard of review by replacing a view of the evidence "in the light most favorable to the State" with a "proper deference to the findings of the trial court," which this court considered to be more consistent with the standard announced by the United States Supreme Court in *Ornelas.* *Id.* at 412-413, 94 S.W.3d at 895-896.

■ ■ We note at the outset that a pretextual stop does not violate federal constitutional law. In *Ohio v. Robinette,* 519 U.S. 33 (1996), the United States Supreme Court held that a consensual search for contraband that took place just after a valid traffic stop did not violate the United States Constitution. *See also Whren v. United States,* 517 U.S. 806 (1996) (holding that the constitutionality of a traffic stop does not depend on the actual, subjective motivations of the individual police officers involved). The issue raised in the case before us, however, is whether a pretextual stop is prohibited under the Arkansas Constitution. In a trio of state constitutional law decisions handed down by this court in 2002, *Jegley v. Picado,* 349 Ark. 600, 80 S.W.3d 332 (2002), *State v. Sullivan,* 348 Ark. 647, 74 S.W.3d 215 (2002), and *Griffin v. State,* 347 Ark. 788, 67 S.W.3d 582 (2002), we left no doubt that this court will decide that, at times, it is appropriate to diverge from federal precedent under the United States Constitution and look to our own state constitution. In both *Griffin* and *Sullivan,* we noted that this court had the authority to do so, when the state constitution is argued to this court. *See Griffin,* 347 Ark. at 792, 67 S.W.3d at 584; *Sullivan,* 348 Ark. at 649-50, 74 S.W.3d at 217 (both citing *Arkansas v. Sullivan,* 532 U.S. 769, 772 (2001) (*per curiam*)).

Moreover, in our *Sullivan* decision, we relied on the divergence of the United States Supreme Court's and this court's view of pretext as expressed in our common law. We said: "[w]hile the United States Supreme Court was tilting in one direction in its pretext analysis — culminating finally in the plain statement of their decision in *Whren* — we consistently took a different direction." *Sullivan,* 348 Ark. at 655; 74 S.W.3d at 221 (citing *Griffin, supra; Ray v. State,* 304 Ark. 489, 803 S.W.2d 894 (1991); *Hines v. State,* 289 Ark. 50, 709 S.W.2d 65 (1986); *Richardson v. State,* 288 Ark 407, 706 S.W.2d 363 (1986); *Brewer v. State,* 271 Ark. 810,

611 S.W.2d 179 (1981)). This court in *Sullivan* thus utilized its common-law history as justification to diverge from federal precedent. *See State v. Gunwall*, 106 Wash.2d 54, 720 P.2d 808 (1986).[1]

■ An examination of this court's decisions relating to traffic stops where the police officer had an ulterior motive for the stop reveals different treatment from pretextual arrests. While this court's jurisprudence departed from the United States Supreme Court's regarding pretextual arrests, the same was not the case where pretextual stops were involved. Indeed, this court has never held a valid traffic stop to be unconstitutional because of a police officer's ulterior motives. In fact, we have held just the opposite. *See, e.g., Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994).

In *Mings*, the facts were similar to the facts in the instant case. In that case, a state trooper stopped a mobile home because it was weaving between the shoulder and the lane line. The trooper testified that the traffic stop had been accomplished as part of a "saturation" program and that his "assignment, after making legitimate traffic stops, 'was to take the stops farther. Instead of jumping out and writing a ticket, we talk to the people and try to see if there's any criminal activity going on.'" *Id.* at 205, 884 S.W.2d at 599. Following the stop, the trooper made the driver get out of the car and stand at the rear of the mobile home. The defendant explained that he was inexperienced with driving mobile homes. The trooper then radioed to his station and learned that the defendant had several felony convictions and was on parole for murder. The trooper issued the defendant a verbal warning on the traffic offense and asked if he could search the vehicle. On being told that the mobile home had been rented by one of the passengers, the trooper asked that person if he could search the vehicle, even going so far as to say that he could not search without permission and that the person had a right to refuse. He then requested that the person sign a consent form. The person consented to the

---

[1] This court has also used two other *Gunwall* factors when determining whether federal constitutional precedent should be discarded in favor of state law. In *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002), we looked to textual and structural differences between the Bill of Rights in the United States Constitution and the Declaration of Rights in the Arkansas Constitution. In *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002), we focused more on our state's constitutional history, which is another *Gunwall* criterion.

search. The defendants, three in number, were all arrested after the search revealed five bricks of cocaine worth $4 million.

■ At trial, each defendant argued that the search of the mobile home was illegal because the reason for the stop was a pretext. The trial court held that the search was valid, and this court affirmed. We acknowledged in our opinion that pretextual arrests violated the Fourth Amendment.[2] *Id.* at 210, 884 S.W.2d at 602. We also said that "[a]n otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." *Id.* (citation omitted).

■ ■ Not only is our *Mings* decision precedent for the State's position, but the State is also correct that this court drew a clear distinction between pretextual arrests and pretextual stops in our *Sullivan* opinion. We made the distinction based on the heightened intrusiveness associated with an arrest. Unlike pretextual arrests, our common-law jurisprudence does not support invalidation of a search because a valid traffic stop was made by a police officer who suspected other criminal activity. Moreover, it is important to note that in the instant case the subsequent search of Harmon's person was conducted only after he voluntarily consented. We hold that the search and seizure of drugs in this case was valid. We reverse the suppression order of the circuit court and remand for further proceedings.

Reversed and remanded.

CORBIN, J., not participating.

---

[2] *Mings* was decided before the United States Supreme Court decided *Whren v. United States*, 517 U.S. 806 (1996), which validated pretextual arrests under the United States Constitution, and *Sullivan, supra*, which invalidated pretextual arrests under the Arkansas Constitution.