STATE of Arkansas *v.* Phillip Ray NICHOLS, Trudy Lynn
Nichols, and Dale Christopher Scamardo

CR 05-374

216 S.W.3d 114

Supreme Court of Arkansas
Opinion delivered October 20, 2005

*Ray Hodnett*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen.,
for appellee.

Tom Glaze, Justice. The State of Arkansas brings this
interlocutory appeal from the trial court's order granting
the motion to suppress filed by the three appellees in this case, Phillip
Nichols, Trudy Nichols, and Dale Scamardo. At issue is whether
exigent circumstances compelled a warrantless entry into the home of
the appellees, and whether any such exigent circumstances were
created by the investigating officer.

The facts were established at the January 26, 2005, suppression hearing by the testimony of Greenwood Police Officer Will Dawson. Dawson testified that, on June 25, 2004, he received a phone call informing him that a woman had purchased iodine at a local feed store. Dawson also obtained the license tag number and a description of the vehicle, and was able to determine the address at which the vehicle was registered. Dawson, who was in plain clothes, drove to that address and then called for backup, so he would have officers in uniform and in marked police units with him when he approached the house.

After two uniformed officers arrived at the defendants' house, Dawson approached the residence. As he did so, Dawson detected a chemical odor in the air. He then proceeded to a window in the front door and looked inside the house. Dawson saw three people and a kitchen table; on the table were "items of paraphernalia used in the manufacture of methamphetamine." On the porch, there was also a soda bottle with a tube protruding from the cap. Dawson stated that he believed this bottle to be a hydrogen chloride gas generator used in the manufacture of methamphetamine.

As he stood on the front porch observing the occupants in the house, Dawson started knocking and saying "police." Inside, the two men and a woman were picking up items off the table and running into each other; Dawson described the scene as "pretty much chaos." One man, later identified as Phillip Nichols, had two jars in his hand. The other man, Dale Scamardo, was dragging a trash can from the area, and the female, Trudy Nichols, had "something" in her hands, although Dawson could not identify what it was. Dawson also noted other items on the table that he described as being "part of the process" of manufacturing methamphetamine, such as lighter fluid, tubing, glass jars, Red Devil lye, and coffee filters.

Dawson testified that while he was knocking on the door, the occupants of the house "weren't paying any mind" to him, so he surmised that they were trying to get rid of the contents of the jars. He stated that he had "no doubt" that they were trying to destroy the evidence of the felony that was taking place. Between the activity of the people inside the house and the chemical odor in the air, Dawson determined that it was in the interest of everyone's safety that he try to enter the house. He tried the door and, finding it locked, kicked the door in. He and the back-up officers entered the residence, removed the occupants, and secured

the house. After the house was secure, Dawson obtained a search warrant and came back to conduct a complete search of the house.

The trial judge asked Dawson whether, if the three people had not seen Dawson when he looked in the door's window, he could have left the scene and obtained a warrant. Dawson replied that the people in the house knew he was there, and they knew he was knocking and saying "police." Their reaction, he said, was to grab things from the table and run instead of opening the door. Dawson asserted that, despite his knowledge of the iodine purchase, the chemical odor in the air, and the hydrogen chloride generator on the front porch, he did not have probable cause to believe there was a crime being committed until after he saw the items on the table inside the residence.

After considering the arguments of counsel, the trial court took the motion to suppress under advisement. On February 3, 2005, the trial court issued an order granting the defendants' motion to suppress, ruling that, under the totality of the circumstances, "this warrantless entry into the home was not justified by the officer's stated belief that evidence would be destroyed or by any other exigent circumstance." The State filed its notice of appeal on February 4, 2005.

Although neither party has mentioned the issue in their briefs, this court must first consider whether it has jurisdiction of the State's appeal. *See State v. Gray*, 319 Ark. 356, 891 S.W.2d 376 (1995) (this court has a duty to raise the issue of the propriety of the State's appeal, even where neither party raises the issue, because it is a matter of subject matter jurisdiction). Under Ark. R. App. P.—Crim. 3(a) (2005), the State may take an interlocutory appeal "only from a pretrial order in a felony prosecution which . . . grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence . . . ." Further, Rule 3(c) provides as follows:

> (c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that *the correct and uniform administration of the criminal law requires review by the Supreme Court,* he may

take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

(Emphasis added.)

As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Rule 3. *State v. Pruitt*, 347 Ark. 355, 64 S.W.3d 255 (2002); *State v. McCormack*, 343 Ark. 285, 34 S.W.3d 735 (2000); *State v. Guthrie*, 341 Ark. 624, 19 S.W.3d 10 (2000). We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *State v. Warren*, 345 Ark. 508, 49 S.W.3d 103 (2001); *State v. Thompson*, 343 Ark. 135, 34 S.W.3d 33 (2000).

As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of the law. *State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005); *State v. Warren, supra*. We do not permit State appeals merely to demonstrate the fact that the trial court erred. *Pittman, supra*. Where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *State v. Williams*, 348 Ark. 585, 75 S.W.3d 684 (2002). This court has noted that it will not even accept mixed questions of law and fact on appeal by the State. *State v. Hagan-Sherwin*, 356 Ark. 597, 158 S.W.3d 156 (2004); *State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997). Furthermore, this court will not accept an appeal by the State where the trial court has acted within its discretion after making an evidentiary decision based on the particular facts of the case or even a mixed question of law and fact. *State v. Guthrie, supra; State v. Jones*, 321 Ark. 451, 903 S.W.2d 170 (1995). Thus, this court must determine whether the issue subject to appeal is one involving the *interpretation* of a rule or statute, as opposed to one involving the *application* of a rule or statute. *Pruitt, supra; Guthrie, supra*.

This appeal does not involve the correct and uniform administration of the criminal law. This is a case involving the trial court's consideration of the particular facts of the case and its determination that those facts did not justify the officer's warrant-

less entry into the defendants' home. Here, the trial court determined that, "[u]nder the totality of the circumstances, this warrantless entry into the home was not justified by the officer's stated belief that evidence would be destroyed or by any other exigent circumstances." Such a determination necessarily turned on the trial court's consideration of the facts, which consisted solely of Officer Dawson's testimony. This court has never wavered in its long-standing rule that it is the province of the trial court, not this court, to determine the credibility of the witnesses. *See, e.g., Jackson v. State*, 359 Ark. 87, 194 S.W.3d 757 (2004) (we do not attempt to weigh the evidence or pass on the credibility of witnesses; that duty is left to the trier of fact); *State v. Guthrie, supra* (dismissing the appeal because the trial court's ruling was a "fact–intensive matter" resolved "after receiving the evidence and weighing the credibility of the witnesses"); *State v. Stephenson*, 330 Ark. 594, 955 S.W.2d 518 (1997).

The State's instant appeal turns on whether the facts supported the trial court's finding that no exigent circumstances justified a warrantless search. Even though the State attempts to frame its argument in terms of whether the trial court misconstrued the holding of *Mann v. State*, 357 Ark. 159, 161 S.W.3d 826 (2004), the resolution of that issue nonetheless turns on the trial court's consideration of the facts surrounding Officer Dawson's approach to the defendants' house. As noted above, this court has repeatedly explained that, "[w]here the trial court acts within its discretion after making an *evidentiary* decision based on the *facts* on hand or even a *mixed question of law and fact, this court will not accept an appeal*" under Rule 3. *State v. Howard*, 341 Ark. 640, 648, 19 S.W.3d 4, 10 (2000) (emphasis added); *see also State v. Hart*, 329 Ark. 582, 952 S.W.2d 138 (1997) ("Because the issue presented in this appeal involves a mixed question of law and fact, an interpretation of our rules with widespread ramifications is simply not at issue here.").

In the instant appeal, the State argues that the trial court misapplied the holding of the *Mann* case to the facts before it. Because the resolution of the issues turns on the facts unique to the case, the matter is not appealable by the State, and the appeal must therefore be dismissed.