2010 Ark. 134

**STATE of Arkansas, Appellant,**

v.

**Jose A. MANCIA–SANDOVAL &
Osires Guevara, Appellees.**

**No. CR 09–1094.**

Supreme Court of Arkansas.

March 18, 2010.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellant.

No response.

PAUL E. DANIELSON, Justice.

Appellant State of Arkansas appeals from the circuit court's order granting a motion to suppress evidence in favor of appellees Jose Adilio Mancia–Sandoval and Osires Guevara. The State's sole point on appeal is that, because a pretextual stop is not prohibited by the Arkansas or federal constitutions, the circuit court erred in suppressing evidence discovered following a canine sniff of a vehicle that was validly detained on probable cause. Appellees did not file a response. We agree with the State and reverse and remand.

The record reveals the following facts. Deputy Cory Coggin had been conducting a six-month drug-trafficking investigation, which involved a possible drug house that he had under surveillance. On November 3, 2008, Benton County Sheriff's Deputy Eric Lyle and his canine were stationed near that house. Two different sources advised Deputy Coggin that there was going to be some type of drug activity coming from that house that night. Around ten o'clock that evening, Deputy Coggin told Deputy Lyle on the radio that two vehicles had left the house and asked him to follow a white Honda until he had probable cause to stop it.

Deputy Lyle quickly followed the white Honda, and as he approached the car to read the license plate, the driver slammed on his brakes, started to turn, turned on the turn signal, and turned into a corner gas station's parking lot. The car's signal came about 10 to 20 feet before the car turned. Deputy Lyle initiated a pretextual traffic stop based on the improper signaling before the turn. Deputy Lyle testified that after he told the driver the reason he stopped the car, the driver appeared to be extremely nervous.

Deputy Lyle ran his canine around the car approximately five minutes after he initiated the traffic stop. Deputy Lyle did not issue a traffic-violation citation, but, after the dog alerted on the car, he detained both appellees, the driver and a passenger, and searched the car. Deputy Lyle found approximately four ounces of methamphetamine. Both appellees were charged with possession of methamphetamine with intent to deliver. Appellees moved to suppress the evidence, alleging that it was seized in violation of their Fourth Amendment rights. The circuit court held a suppression hearing.

The State admitted that the stop was pretextual, but argued that, because Deputy Lyle had probable cause that a traffic violation occurred, it was reasonable to stop the vehicle under Arkansas and federal constitutional law and that the officer's immediate use of his canine around the vehicle and a positive alert gave him probable cause to search it. Appellees argued that Deputy Lyle created the probable cause to stop the vehicle and that there was no additional probable cause to allow the canine sniff because mere nervousness during the traffic stop did not justify it.

In granting appellees' motion to suppress, the circuit court made the following findings on the record after the suppression hearing:

While it's clear under the United States Supreme Court decisions—decisions in [*Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)] and [*United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)], and the [*State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002)] case by the Arkansas Supreme Court, that pretextual stops in general are constitutional, in this case I'm persuaded that this traffic stop was unconstitutional. The officer testified he was told to find a reason to stop the defendant's car, which he did. The defendant's quick braking and utilization of the turn signal, while the defendants' car was turning into a gas station, became the basis of the traffic stop. The officer testified that he was going to find a reason to stop this car and use of the turn signal while turning was the basis for his stop. He had acknowledged that he had to accelerate rapidly to catch up to the vehicle and thus there is a question as to whether the defendants braked suddenly. This detective defined a reason to stop the defendants' car was confirmed by the officer who gave it [sic]. Both officers admitted that this car was going to be found violating some traffic law and stopped. A traffic violation arrest is pretext for—pretext for narcotics search in general is valid, but I can find no authority that suggests officers may set out on a mission to find a traffic violation. I commend the officers for their honesty, their integrity, and credibility with this Court are intact [sic]. I'm persuaded, however, that the stop crosses constitutional boundaries and thus the motion to suppress is granted.

The State now appeals the circuit court's order granting the appellees' motion to suppress evidence.

Prior to examining the merits of any state appeal, we must first determine whether it is a proper state appeal. Arkansas Rule of Appellate Procedure—Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R.Crim. P[.] 16.2 to suppress seized|₄evidence[.]" Ark. R.App. P.-Crim. 3(a)(1) (2009). The rule further states:

> (c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, *and that the correct and uniform administration of the criminal law requires review by the Supreme Court,* he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R.App. P.-Crim. 3(c) (emphasis added).

█ As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *See State v. Jones,* 369 Ark. 195, 252 S.W.3d 119 (2007) (citing *State v. Nichols,* 364 Ark. 1, 216 S.W.3d 114 (2005)). The former is a matter of right, whereas the latter is not derived from the constitution, nor is it a matter of right, but is granted pursuant to Ark. R.App. P.-Crim. 3. *See id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *See id.*

█ As a matter of practice, this court has only taken appeals that are narrow in scope and involve the interpretation of law. *See id.* (citing *State v. Pittman,* 360 Ark. 273, 200 S.W.3d 893 (2005)). We do not permit State appeals merely to demonstrate the fact that the circuit court erred. *See id.* Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *See id.* Similarly, where the |₅resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State. *See id.* Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *See id.*

█ The issue presented here is whether or not the circuit court erred when it looked to the subjective intent of the law enforcement officers involved in the traffic stop and found that the stop violated appellees' constitutional rights based on that intent. We conclude that this appeal does present an issue involving the interpretation of our criminal rules and will have widespread ramifications because it will provide guidance to our law enforcement officers and our courts as to the law in our state when faced with similar circumstances in the future. Therefore, we accept this case as a proper state appeal.

The State does not dispute that the traffic stop in the instant case was pretextual. However, the State argues that the circuit court erred by suppressing evidence found during the search of appellees' vehicle because the circuit court improperly prohibited a pretextual stop based on the officers' intention. The State contends that the constitutionality of a traffic stop does not depend on the actual, subjective motivations of the officers.

■ On review of a suppression challenge, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *See Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

■ We have previously recognized that a pretextual traffic stop does not violate the federal constitution:

> We note at the outset that a pretextual stop does not violate federal constitutional law. In *Ohio v. Robinette*, 519 U.S. 33 [117 S.Ct. 417, 136 L.Ed.2d 347] (1996), the United States Supreme Court held that a consensual search for contraband that took place just after a valid traffic stop did not violate the United States Constitution. *See also Whren v. United States*, 517 U.S. 806 [116 S.Ct. 1769, 135 L.Ed.2d 89] (1996) (holding that the constitutionality of a traffic stop does not depend on the actual, subjective motivations of the individual police officers involved).

*State v. Harmon*, 353 Ark. 568, 574, 113 S.W.3d 75, 78 (2003). Additionally, this court concluded in *Harmon* that our previous decisions relating to traffic stops where the police officer had an ulterior motive for the stop were treated differently than cases involving pretextual arrests.

"[T]his court has never held a valid traffic stop to be unconstitutional because of a police officer's ulterior motives." *Id.* at 575, 113 S.W.3d at 79.

■ It is clear that this court will not allow a police officer's ulterior motives to serve as the basis for holding a traffic stop unconstitutional so long as it was a valid stop—meaning, the officer had the proper probable cause to make the traffic stop. *See id.* (where the officer stopped a vehicle because the right brake light was out); *Mings v. State*, 318 Ark. 201, 884 S.W.2d 596 (1994) (where the officer stopped a motor home because it was weaving between the shoulder and the lane line).

■ In the instant case, the circuit court found that "[t]he defendant's quick braking and utilization of the turn signal, while the defendants' car was turning into a gas station, became the basis of the traffic stop." While the court questioned whether the defendants braked suddenly based on the officer's testimony that he had to accelerate rapidly to catch up to their vehicle, it acknowledged that the improper use of the turn signal was part of the basis for the stop. The circuit court then expressed concern that both officers had admitted that these appellants were going to be found violating some traffic law and have their vehicle stopped. Based on that testimony of the officers, the circuit court held, "I can find no authority that suggests officers may set out on a mission to find a traffic violation." Because the circuit court acknowledged that some probable cause existed for the stop, but found the stop unconstitutional based on the officers' ulterior motives, we must reverse.

As previously noted, a pretextual stop is not impermissible under either the federal or Arkansas Constitution and, thus, does not invalidate an otherwise lawful stop of a

vehicle. *See Harmon, supra.* The circuit court did not find that the reasons cited by the officers for the stop did not constitute probable cause, nor did it express that it believed the officers' testimony to be fabricated. To the contrary, the circuit court "commend[ed] the officers for their honesty, their integrity, and credibility." Therefore, when the subjective intent of the officers is not considered, the stop was "otherwise lawful." For this reason, we reverse the circuit court's order suppressing the evidence against the appellees and remand.

Reversed and remanded.

HANNAH, C.J., dissenting.

HANNAH, C.J., dissenting.

⎿₈I respectfully dissent. The majority errantly accepts a State's appeal based on a need to interpret law when that law has already been interpreted. According to the majority, the issue this court needs to decide is "whether or not the circuit court erred when it looked to the subjective intent of the law enforcement officers involved in the traffic stop." However, "there is no longer a pretext inquiry under federal law as long as there was probable cause for the traffic stop." *Nelson v. State*, 365 Ark. 314, 320, 229 S.W.3d 35, 41 (2006).[1] Further, "this court has never held a valid traffic stop to be unconstitutional because of a police officer's ulterior motives. In fact, we have held just the opposite." *State v. Harmon*, 353 Ark. 568, 575, 113 S.W.3d 75, 79 (2003). Under settled law, where, as in the present case, probable cause supports the traffic stop, the motives of the law enforcement officers are irrelevant.

Although the majority acknowledges that State appeals are not accepted simply to demonstrate that the circuit court erred,

that is the only purpose served by this appeal. If we have changed our rules regarding State appeals, we owe it to the bench and bar to alter our rules to reflect that change. Otherwise, we leave the impression that we pick and choose what appeals we will accept. Under our precedent, and under Arkansas Appellate Rule of Procedure—Criminal 3, this appeal should be dismissed.

---

1. Sandoval argued a violation of his Fourth Amendment rights.