2012 Ark. 107

**STATE of Arkansas, Appellant**

v.

**Mark TYSON, Appellee.**

**No. CR 11–713.**

Supreme Court of Arkansas.

March 8, 2012.

Rehearing Denied April 12, 2012.

Dustin McDaniel, Atty. Gen., for appellant.

Lee Deken Short and William O. "Bill" James, Little Rock, AR, for appellee.

PAUL E. DANIELSON, Justice.

Appellant State of Arkansas appeals from the circuit court's order granting a motion to suppress evidence in favor of

appellee Mark Tyson. The State argues on appeal that the circuit court erred in granting Tyson's motion to suppress evidence discovered during the execution of a nighttime search warrant. We agree that the circuit court erred, and we reverse and remand.

On the evening of September 4, 2010, after receiving complaints of narcotic activity, patrol officers began to watch the area around trailer number 23 in the Lamplighter Trailer Park located at 1201 South Highway 161 in Jacksonville. At approximately 8:30 p.m., an officer observed a male carry three black trash bags from that trailer to a nearby dumpster. The officer retrieved those three trash bags to investigate the names of the adults living in the trailer. The manager of the trailer park had informed the officer that there were three small children living there and two adults, but the manager did not know the adults' names. Upon opening the bags, the officer found items relating to narcotics, specifically methamphetamine. The officer then contacted narcotics officers, Detective Cindy Harbor and her supervisor, Sergeant Amanda Temple, to further investigate.

Detective Harbor and Sergeant Temple found several items in the trash bags used to manufacture methamphetamine, such as organic iodine packages, a bottle of Heet, rubber gloves, red stained paper towels from a pill soak, two boxes of pseudoephedrine, a milk jug that was used for the pill soak, several empty blister packs, and coffee filters. The coffee filters they found were wet, and the HC Generator and other "actual lab components" were not in the trash; therefore, the officers believed that the occupants of the trailer were still in the active process of manufacturing methamphetamine. Additionally, the officers found what Detective Harbor

described as "fresh" baby diapers in the trash and observed toys around the trailer.

Detective Harbor immediately typed up a search warrant and included a nighttime clause because it would be after 8:00 p.m. when the search was executed. The affidavit supporting the search warrant contained the following "Justification for the Nighttime Clause:"

THE CONTENTS OF THE TRASHBAGS REVEALED SEVERAL BABY DIAPERS. OFFICER TEMPLE WAS ADVISED BY THE TRAILER PARK MANAGER THAT THERE ARE THREE SMALL CHILDREN BETWEEN THE AGES OF 3 AND 8 YEARS OF AGE LIVING IN TRAILER NUMBER 23. THE MANAGER WAS UNCERTAIN OF THE NAMES OF THE ADULTS WITHOUT GOING TO THE OFFICE TO PULL THE LEASE AGREEMENTS. IT IS BELIEVED BECAUSE OF THE LACK OF THE ACTUAL LAB COMPONENTS IN THE TRASH THAT THEY MAY BE IN THE ACTUAL PROCESS OF COOKING THE METHAMPHETAMINE AT THIS TIME.

A judge signed the warrant, including the nighttime clause, at 9:42 p.m. on September 4, 2010. Detective Harbor immediately executed the warrant after getting it signed.

Tyson was present when officers entered the trailer. Officers discovered methamphetamine being manufactured in the bathroom, while three small children were asleep inside the trailer.

Tyson moved to suppress any evidence found in the trailer, arguing that the issuing judge lacked probable cause to issue the warrant and that the nighttime search clause in the warrant did not meet the requirements of Ark. R.Crim. P. 13.2(c). After a suppression hearing, the circuit

court found that there was probable cause to issue the search warrant. However, the circuit court granted Tyson's motion to suppress, finding that none of the night-time-search conditions in Rule 13.2(c) applied to the search in the instant case. The State timely filed this appeal.

Prior to examining the merits of any state appeal, we must first determine whether it is a proper state appeal. Arkansas Rule of Appellate Procedure–Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R.Crim. P. 16.2 to suppress seized evidence [.]" Ark. R.App. P.—Crim. 3(a)(1) (2011). The rule further states:

> (d) The Supreme Court will not consider an appeal filed under either subsection (a)(1) or (2) or subsection (b) of this rule unless the correct and uniform administration of the criminal law requires review by the court.

Ark. R.App. P.-Crim. 3(d).

■ As this court has frequently observed, there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *See State v. Jones,* 369 Ark. 195, 252 S.W.3d 119 (2007) (citing *State v. Nichols,* 364 Ark. 1, 216 S.W.3d 114 (2005)). The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Ark. R.App. P.-Crim 3. *See id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *See id.*

■ As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. *See State v. Thompson,* 2010 Ark. 294, 377 S.W.3d 207. We do not permit state appeals merely to demonstrate the fact that the circuit court erred. *See id.* Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *See id.* Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter is not appealable by the State. *See id.* Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *See id.*

■ The issue presented in the instant case is whether the circuit court erroneously concluded that the third circumstance that allows the issuance of a night-time search warrant only applies to officer safety and, therefore, that none of the nighttime search conditions of Rule 13.2(c) of the Arkansas Rules of Criminal Procedure applied. We conclude that this appeal does present an issue involving the interpretation of our criminal rules and is one that will have widespread ramifications in that it will provide guidance to our law enforcement officers and our courts as to the law in our state when faced with similar circumstances in the future. Therefore, we accept this case as a proper state appeal and now turn to the merits.

The State alleges that the circuit court erred by finding that none of the nighttime-search conditions applied because the facts provided in the affidavit and the search warrant supported a nighttime search pursuant to Rule 13.2(c)(iii). The

State contends that while case law until now has only discussed how Rule 13.2(c)(iii) applies to officer safety, neither the rule itself or case law has limited it to officer safety. The State further argues that the interest in protecting small children inside a residence containing an active methamphetamine laboratory is undoubtedly comparable to the interest in protecting the safety of law-enforcement officers approaching such a residence. Tyson avers that there is no authority to apply the rule to the safety of children. We agree that Rule 13.2(c)(iii) provides a limited exception that does not apply to the facts in the instant case; however, we hold that the officers acted in good faith when they executed the warrant.

■ On review of a suppression challenge, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *See Thompson, supra.*

Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides the requirements for a valid application for a search warrant and the totality-of-the-circumstances approach to be taken in determining whether reasonable cause exists for the search. Nighttime searches, however, are treated differently under our criminal rules and require that the judicial officer find reasonable cause that at least one of three listed exigent circumstances exists:

> Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:

> (i) the place to be searched is difficult of speedy access; or

> (ii) the objects to be seized are in danger of imminent removal; or

> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

Ark. R.Crim. P. 13.2(c) (2011).

Tyson is correct in his assertion that, thus far, the case law that does focus on the safety factor in Rule 13.2(c) has overwhelmingly been in the context of officer safety. For example, in *Tate, supra,* the affidavit contained a statement to the effect that surveillance cameras were mounted on the outside of the house in which the officers believed methamphetamine was being produced and would reveal the officers to the occupants, thereby creating a risk to their safety. As a result, this court held that the affidavit in support of the nighttime search warrant was sufficient because it illustrated that there would have been a greater danger to the officers' safety if the occupants were aware of their approach. *Tate v. State,* 357 Ark. 369, 380, 167 S.W.3d 655, 662 (2004).

Additionally, in *Owens v. State,* 325 Ark. 110, 926 S.W.2d 650 (1996), this court held that there was a sufficient factual basis for a nighttime search when one of the factors presented by the affiant dealt with the safety of the officers. There, the conditions surrounding the area to be searched would have required the officers to approach the residence in their vehicles at a reduced or slow rate of speed, exit their vehicles approximately 250 yards from the residence, and approach the residence on

foot, thereby dangerously exposing them to detection. *See id.* This court specifically took the opportunity to note that while more than one factor was presented in *Owens,* the use of the word "or" in the rule makes it clear that the existence of any one of the factors may justify a nighttime search.

In *Langford v. State,* 332 Ark. 54, 962 S.W.2d 358 (1998) there was information in the affidavit presented to the court for a search warrant that a police informant had seen drugs and weapons in the residence to be searched, the suspect had threatened one of the informants with a weapon within the last week, and that the location of the residence made speedy access impossible. This court held that the information, part of which obviously fit subsection (c)(i) of the rule and part of which seemed to deal with safety in some sense, constituted a sufficient factual basis for a nighttime search. *See id.* While it was not clearly expressed, the safety of the informant was impliedly one of the factors presented to and considered by the judiciary who issued the warrant.

 Rule 13.2(c) (iii) of the Arkansas Rules of Criminal Procedure does not expressly limit the safety concern to the safety of police officers. It is well settled that we construe court rules using the same means and canons of construction used to interpret statutes. *See Jackson v. Sparks Reg'l Med. Ctr.,* 375 Ark. 533, 294 S.W.3d 1 (2009). The basic rule to which all other interpretive guides defer is to give effect to the intent of the drafting body. *See Jonesboro Healthcare Ctr., LLC v. Eaton–Moery Envtl. Servs., Inc.,* 2011 Ark. 501, 385 S.W.3d 797. When the language is plain and unambiguous, we determine the intent of the drafting body from the ordinary meaning of the language used. *See City of Little Rock v. Rhee,* 375 Ark. 491, 292 S.W.3d 292 (2009). Subsec-

tion (c)(iii) simply allows for a judicial officer to issue a nighttime search warrant when there is reasonable cause to believe that "the warrant can only be *safely or successfully executed* at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy." Nothing in that language suggests that the only safety concern in executing the warrant is the officers' safety.

 The problem with the affidavit in the instant case is that there were not facts to support a finding that the children, or anyone else, would only be safe during the execution of the warrant if the execution took place in the cover of darkness that nighttime affords. Rather, it appears that the officers included facts to support a finding that, in order to keep the children on the premises safe, who might have been at risk of serious bodily injury, they had probable cause to go in immediately, which happened to be nighttime. These scenarios are factually different and, currently, Rule 13.2 does not include an exception that applies to the second scenario. Therefore, the issuing judicial officer was mistaken by finding reasonable cause pursuant to Rule 13.2 and erred by issuing the nighttime search warrant.

The final issue is whether the executing officers operated in good faith under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and if so, whether that salvages an otherwise defective search and seizure. We have previously held that we would apply the *Leon* good-faith exception to our criminal rules under appropriate circumstances. *See Hall v. State,* 302 Ark. 341, 789 S.W.2d 456 (1990).

In *Leon,* the Court cited four instances in which suppression of evidence is an appropriate remedy, or, stated differently, where the objective good faith of the officers would not save the warrant:

1. Where the officers misled the issuing judge with information they knew was false or would have known was false, except for reckless disregard of the truth.

2. Where the issuing judge abandons the judicial role of neutrality and detachment and becomes an adjunct law enforcement officer.

3. Where the officers' affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

4. Where the search warrant is facially deficient in failing to identify the place to be searched or things to be seized.

468 U.S. at 923, 104 S.Ct. 3405. This court has taken note that the *Leon* Court was emphatic in its decision that suppression of evidence is designed to deter police misconduct rather than to punish the issuing judges for their errors. *See Garner v. State*, 307 Ark. 353, 820 S.W.2d 446 (1991).

In the instant case, the judicial officer was not presented with mere conclusory statements when the search warrant was sought. The facts presented were these: baby diapers were found in the trash bags taken from the trailer to the dumpster; the trailer park manager had informed officers that three small children between the ages of three and eight were living in the trailer; and, no lab components were found in the trash, which led officers to believe that the occupants of the trailer might have been in the actual process of cooking the methamphetamine.

Although we may not look to facts outside of an affidavit to determine probable cause, when assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit. *See Moya v. State*, 335 Ark. 193, 201, 981 S.W.2d 521, 525 (1998) (citing *Sims v. State*, 333 Ark. 405, 969 S.W.2d 657 (1998)). In the instant case, the officer testified at the suppression hearing that the diapers that had been found in the trash bags were "fresh" and that the filters that had been found were wet, indicating they had just been used. At the time these discoveries were made, it was the evening hour, which common sense would suggest made it even more likely that children were home.

The facts presented in the affidavit here did not simply mirror the boilerplate language that sets out the requirements of Rule 13.2. However, after reviewing and analyzing the language in Rule 13.2, specifically the language in 13.2(c)(iii) dealing with safety, this court concludes that Rule 13.2 does not contain an exception for a nighttime search warrant that applies to the facts that were presented in the affidavit in the instant case. Regardless, the executing officers no doubt believed they were complying with the law as the facts in the affidavit and search warrant provided reasonable cause that children were in immediate danger.

The issuing judge found that the facts presented to it provided a basis for reasonable cause for a nighttime search warrant pursuant to Rule 13.2 even though this court now holds they do not. Additionally, as evidenced by this split opinion, this court cannot unanimously agree in the exact interpretation of the language in Rule 13.2(c)(iii). Therefore, we cannot hold that an officer should have known that the threat of immediate harm to the children inside a trailer with an active methamphetamine lab was not the type of reasonable cause covered by Rule 13.2(c)(iii) to execute the search warrant in hand that had been considered and signed by a judge. Accordingly, we hold that the *Leon* good-faith exception applies under these circumstances and that the circuit court erred in

suppressing the evidence from the night-time search and seizure.

Reversed and remanded.

HANNAH, C.J., BROWN, and BAKER, JJ., dissent.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. Under the majority's analysis, a search warrant may now be executed at night for the purpose of entering a premises to assure the safety of persons who may be there. A search warrant is a criminal process through which a court permits entry of police into private premises for the purpose of searching for and seizing "contraband or evidence of a crime." *See Coggin v. State,* 356 Ark. 424, 438, 156 S.W.3d 712, 721 (2004). Under the Fourth Amendment, no warrant may issue "but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." A search warrant is criminal in nature and its use is restricted to issues arising in criminal prosecutions. *See* 79 C.J.S. Searches and Seizures § 172 (2006).

Further, the plain language of Arkansas Rule of Criminal Procedure 13.2(c)(iii) precludes the majority's interpretation. The use of the word "safely," in permitting execution at night where the warrant "can only be safely or successfully executed at nighttime," refers solely to the safety of law enforcement officers who are executing the warrant. Rule 13.2(c)(iii) grants permission to execute at night where that is the only safe time for the officers to do so or where postponing will negate the likelihood the evidence to be seized will still be there. Safety of the occupants of a premise to be searched is simply not contemplated or addressed by Rule 13.2.

The majority's decision ignores stare decisis and the predictability and stability of the law it is intended to protect.

Our rules governing searches do not exist merely to provide technicalities for the sake of form—they exist so that people can rest assured that when an officer produces a search warrant it is with good cause, properly executed, approved by a judicial officer and not an improper attempt to invade the protective sanctity of one's person or home. *Harris v. State,* 264 Ark. 391, 394, 572 S.W.2d 389, 391 (1978). The use of a search warrant to check on the safety of occupants of the premises to be searched is improper. Further, while it is within this court's jurisdiction to change its rules, this court should not change the rules without notice and referring the proposed change to the proper supreme court committee.

In *Harris,* this court stated that "[g]ood cause must exist and be found by the issuing judicial officer to exist to authorize entry into a citizen's privacy in the night time. This is a safeguard justified by centuries of abuse." 264 Ark. at 393, 572 S.W.2d at 393. I believe that the majority is making alterations to Rule 13.2 and the law on search warrants that are improper and unnecessary. The circuit court properly granted the motion to dismiss. Therefore, I dissent.

BROWN and BAKER, JJ., join this dissent.

ROBERT L. BROWN, Justice, dissenting.

The majority radically errs when it applies a good-faith analysis under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1989), to the facts of this case. First, an appeal requiring a factual determination from this court on good faith is not a legitimate State appeal.

See, e.g., State v. Thompson, 2010 Ark. 294, 377 S.W.3d 207. Secondly, the good faith of law enforcement officers cannot offset a complete failure of those officers and the issuing judge to justify and approve a nighttime search under the criteria set out in Arkansas Rule of Criminal Procedure 13(c)(2), regardless of which party appeals. See, e.g., Fouse v. State, 337 Ark. 13, 989 S.W.2d 146 (1999); Garner v. State, 307 Ark. 353, 820 S.W.2d 446 (1991). For these reasons, this appeal must be dismissed.

The majority begins by noting that this is a State appeal under Arkansas Rule of Appellate Procedure–Criminal 3(c) and that the issue for this court to resolve is whether the circuit court erroneously concluded that Rule 13.2(c)(iii) allowing for nighttime search warrants "only applies to officer safety." The majority concludes that this is an issue involving the correct and uniform administration of the criminal law and, thus, a proper State appeal. The majority then answers the question by holding that Rule 13.2(c)(iii) applies only to officer safety. I agree with that conclusion.

The majority opinion then swerves way off course and commences an analysis of whether the executing police officers operated in good faith under Leon to salvage an otherwise defective search and seizure. In doing so, the majority looks to the circumstances militating in favor of officer good faith in the majority's view such as diapers in the trash bags, the fact that officers knew there were small children living on the premises, and the fact that no meth-lab components were in the trash bag. However, in examining these facts as part of its analysis, the majority does precisely what this court has said time and again it will not do in State appeals—it investigates the facts and makes a factual determination. Indeed, in its own opinion,

the majority cites authority stating that we do not take State appeals where the resolution turns on the facts or on a mixed question of law and fact. See State v. Thompson, supra.

The fact that a good-faith analysis under Leon is not appropriate for a State appeal has been acknowledged by this court:

Because the issue presented in this appeal [whether the police officer operated in good faith in executing the search warrant] involves a mixed question of law and fact, an interpretation of our rules with widespread ramifications is simply not at issue here. See State v. Harris, 315 Ark. 595, 868 S.W.2d 488 (1994). We have similarly held: Where the trial court acts within its discretion after making an evidentiary decision based on the facts on hand or even a mixed question of law and fact, this court will not accept an appeal under Ark. R.Crim. P. 36.10 (now Ark. R.App. P.—Crim. 3(c)). State v. Harris, 315 Ark. at 597, 868 S.W.2d 488; State v. Mazur, 312 Ark. 121, 123, 847 S.W.2d 715 (1993); quoting State v. Edwards, 310 Ark. 516, 838 S.W.2d 356 (1992). We only accept appeals by the State when our holding would establish a precedent that would be important to the correct and uniform administration of justice. State v. Rice, 329 Ark. 219, 947 S.W.2d 3 (1997); State v. Townsend, 314 Ark. 427, 863 S.W.2d 288 (1993). Because the circuit court's decision in the present case required him to review unique circumstances and decide mixed question of law and fact, we must conclude that the correct and uniform administration of justice is not at issue. Accordingly, we dismiss the appeal.

State v. Hart, 329 Ark. 582, 584–85, 952 S.W.2d 138, 139 (1997). The same holds true in the case at hand.

In addition, there is the point that the executing police officers, using an objective standard of what a reasonably well-trained police officer would believe is reasonable cause for a nighttime search warrant, as *Leon* requires, could not have so believed in this case. Rule 13.2(c) requires a finding by the judge that there is reasonable cause for the nighttime search based on three criteria:

> (i) the place to be searched is difficult of speedy access; or
>
> (ii) the objects to be seized are in danger of imminent removal; or
>
> (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy.

Rule 13.1 requires affidavits based on one of these three criteria to support the search warrant. No affidavit with the required justification was made for a nighttime search; nor were findings made by the circuit judge of reasonable cause to support such a search.

Indeed, as the circuit judge pointed out in his review of this matter, the affidavit by the police officers "did not set out facts showing reasonable cause to believe that any circumstance existed which justified a nighttime search." The circuit judge went even further and made the following findings in denying that the officers operated in good faith:

> Notwithstanding the search warrant issued by the district judge, there was no objective basis for the Jacksonville Police officer who applied for the warrant or those who conducted the nighttime search to believe that the place to be searched was difficult of speedy access. There was no objective basis to believe that the warrant could only be safely or successfully executed at nighttime or under the circumstances the

occurrence of which were difficult to predict with accuracy. There was no objective basis for a good-faith belief that any exigent circumstance existed to justify a nighttime search. A reasonably well trained law enforcement officer would have known that these factors determine whether a nighttime search warrant is valid.

These factual findings by the circuit judge are beyond dispute and evidence why the search and seizure premised on officer good faith is so far afield.

A good-faith rationale has no place in this State appeal for the reasons stated. Indeed, for there to have been good faith on the part of the executing officers, they would have to have been completely ignorant of our nighttime-procedure rules. That does not equate to good faith. The objective standard requires reasonable knowledge of what our nighttime rules require. *See Hall v. State*, 302 Ark. 341, 789 S.W.2d 456 (1990). Moreover, the search warrant issued by the district judge does not comply with our rules for nighttime searches and could not be affirmed under our case law regardless of which party is appealing. To uphold the search and seizure in this case on grounds of good cause would stand this state's jurisprudence relating to State appeals and nighttime searches on its head. I respectfully dissent.

HANNAH, C.J., and BAKER, J., join this dissent.

KAREN R. BAKER, Justice, dissenting.

The State appeals from the circuit court's order finding probable cause for issuance of the search warrant; but, suppressing the evidence due to failure to comply with the nighttime-search requisites in Rule 13.2(c). In addition, the order found "that a reasonably well trained

law enforcement officer had no 'good faith' basis to believe that a nighttime search warrant was valid when the warrant affidavit presented no facts regarding any of the subsection (c) factors even if a judge issued a nighttime search warrant." The majority finds that the circuit court erred in finding the officers did not act in "good faith." Because this is not a proper State appeal, I dissent.

An appeal by a criminal defendant is a matter of right, whereas an appeal by the State is granted solely pursuant to Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *E.g., State v. Guthrie,* 341 Ark. 624, 19 S.W.3d 10 (2000). This court only takes State appeals that are narrow in scope, involve the interpretation of the law, and not merely to show that the trial judge erred. *E.g., State v. Mancia–Sandoval,* 2010 Ark. 134, 361 S.W.3d 835. Also, a proper State appeal is one that presents an issue of interpretation of the criminal law that would have widespread ramifications or establish important precedent. *See, e.g., State v. Moreno,* 371 Ark. 336, 265 S.W.3d 751 (2007).

If a decision on the merits of the State's appeal would not be important to the correct and uniform administration of the criminal law, we will dismiss the State's appeal. *See, e.g., State v. Short,* 2009 Ark. 630, 361 S.W.3d 257; *see also* Ark. R.App. P.-Crim. 3(d). The correct and uniform administration of justice is at issue when the question presented is solely a question of law independent of the facts in the case appealed. *E.g., State v. S.G.,* 373 Ark. 364, 284 S.W.3d 62 (2008). An appeal that turns on facts unique to the case or involves a mixed question of law and fact does not involve the correct and uniform administration of the criminal law, and is not a proper appeal. *E.g., Short, supra.* Moreover, where an appeal involves the circuit court's application of the law rather than its interpretation, the appeal is not one that is important to the correct and uniform administration of the criminal law. *Id.*

The State attempts to frame the issue as one involving the interpretation of Arkansas Rule of Criminal Procedure 13.2(c)(iii), which permits a nighttime search warrant when "the warrant can only be safely or successfully executed at nighttime under circumstances the occurrence of which is difficult to predict with accuracy." The State asserts that the circuit court erred in its interpretation of subsection (c)(iii) because, while case law has applied the concern for safety to that of the executing officers, the rule does not so limit its application. Contrary to the State's assertion, the basis of the circuit court's ruling was a factual determination that there was no evidence to support that there was a threat to the safety of the children and that the officers, in fact, did not have that belief. The written order states that "the affidavit in support of a nighttime search warrant did not set out facts showing reasonable cause to believe that any circumstance existed which justified a nighttime search." Hence, the court's decision was premised on the facts of this case.

In *State v. Nichols,* 364 Ark. 1, 216 S.W.3d 114 (2005), we refused jurisdiction over a State appeal when the underlying issue was whether exigent circumstances compelled a warrantless entry into the appellees' home after an officer looked into a window and observed a meth lab in operation saying, "[W]here the trial court acts within its discretion after making an *evidentiary* decision based on the *facts* on hand or even a *mixed question of law and fact, this court will not accept an appeal*" under Rule 3. *Id.* at 5, 216 S.W.3d at 117. (Emphasis added.) Just as in *Nichols,* the resolution of this case turns on the facts unique to the case, and we should not accept the appeal.

The majority clearly agrees that this case does not turn on the circuit court's interpretation of Arkansas Rule of Criminal Procedure 13.2(c)(iii), since they decide the case on the State's second argument concerning the good-faith exception to the exclusionary rule announced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1993). The circuit court found that the officers were not entitled to the good-faith exception. An evaluation of the good-faith exception necessarily involves mixed questions of law and fact. *State v. Hart,* 329 Ark. 582, 952 S.W.2d 138 (1997). Because the circuit court's decision on the good-faith exception required it to review unique circumstances and decide mixed questions of law and fact, the correct and uniform administration of justice is not at issue.

Because this is not a proper State appeal and the majority's opinion answers no questions concerning the uniform administration of justice, I would dismiss the appeal.

HANNAH, C.J., and BROWN, J., join.