SLIP OPINION

Cite as 2014 Ark. 194

# SUPREME COURT OF ARKANSAS

No. CR–13–888

| | |
|---|---|
| STATE OF ARKANSAS <br> APPELLANT <br><br> V. <br><br> DWAYNE R. CHERRY <br><br> APPELLEE | **Opinion Delivered** May 1, 2014 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR–13–667] <br><br> HONORABLE WENDELL LEE GRIFFEN, JUDGE <br><br> <u>APPEAL DISMISSED</u>. |

**JOSEPHINE LINKER HART, Associate Justice**

The State of Arkansas appeals from a Pulaski County Circuit Court order granting Dwayne R. Cherry's motion to suppress contraband discovered on his person after a traffic stop. The circuit court found that the police lacked reasonable suspicion to conduct a patdown search pursuant to Rule 3.4 of the Arkansas Rules of Criminal Procedure and that Cherry did not consent to the search of the interior of his clothing. On appeal, the State argues that the circuit court erred as a matter of law by concluding that consent does not satisfy the Fourth Amendment and, consequently, adding reasonable suspicion as a prerequisite to a valid consent to search under Arkansas Rule of Criminal Procedure 11.1. Because this is not a proper State appeal, we dismiss.

After he was charged with possession of a controlled substance (methamphetamine), possession of drug paraphernalia, and theft by receiving, Cherry filed a motion to suppress that challenged the reasonableness of his traffic stop under Rule 3.1 of the Arkansas Rules

of Criminal Procedure. Further, he asserted the necessity of a "pretext inquiry" to determine whether his stop and arrest was the result of "an ulterior investigative motive." The State responded that Cherry was lawfully searched pursuant to his consent.

At the suppression hearing, Detective Jacob Pasmen of the Little Rock Police Department testified that he was working as a patrol officer on the night of December 14, 2013, when he made contact with Cherry at 11:23 p.m. on Kavanaugh Boulevard just north of Markham Street. While exiting the parking lot of a bike shop, he observed Cherry and his wife Patricia pass him driving mopeds. A week or two before that evening's encounter, Pasmen had spoken to Cherry about the need to license his moped. When Cherry and his wife passed him, Pasmen noted that neither bike had a license.

According to Pasmen, when he approached Cherry, Cherry seemed to be "a little bit more nervous than normal." Pasmen asked Cherry if he was carrying any weapons. Pasmen claimed that, when Cherry stated that he was not, he asked Cherry for permission to "pat him down" for officer safety. Pasmen asserted that, during the patdown, he obtained from Cherry "verbal consent" to check the interior of his pockets for contraband. When Pasmen checked Cherry's pockets, he discovered a black purse that contained a couple of bags of methamphetamine. Cherry subsequently told Pasmen that he was nervous because he had an outstanding warrant for violation of his parole. When Pasmen ran the vehicle identification numbers on the mopeds, he learned that both vehicles had been reported stolen.

On cross-examination, Pasmen stated that he stopped Cherry because he believed that

the moped was not registered. He clarified that he had more than one prior encounter with Cherry because of altercations that Cherry and his wife had with Summer Brewer and the man that Brewer was dating. According to Pasmen, he felt the need to pat Cherry down because of the "change in his persona." Previously, he had found Cherry to be a "very calm, well-spoken individual." On this night, Cherry was "more anxious." Pasmen admitted that Cherry did not threaten him, but made him "nervous enough" that he felt the need to check him for weapons. Pasmen further admitted that he did not feel a weapon when he was patting Cherry down, but asked for, and received from Cherry, verbal consent to check his pockets. Pasmen noted that, in addition to himself, two other officers, Baker and Smith were involved with the stop.

Officer Joseph Smith testified that he was Pasmen's back-up officer the night of Cherry's arrest. The officers were patrolling in separate vehicles. Smith stated that the Little Rock police "always tried to make sure we had two officers with each other [because] it's kind of dangerous." Smith asserted that, after the stop had been made, he talked to Cherry's wife, while Pasmen dealt with Cherry. Smith recalled that Pasmen asked Cherry for consent to a patdown. During the pat-down, a small black purse was discovered, containing what they believed was methamphetamine. Smith recalled that Cherry was acting "extremely nervous." Cherry kept walking around and "couldn't stand still, almost like he wanted to leave the area." When Cherry was asked why he was so nervous, Cherry admitted to having an outstanding warrant. According to Smith, that was initially how the police found out about the warrant.

In its written order, the circuit court recited that Cherry, "under suspicion of violating law" was "subjected to a 'pat down' search pursuant to Rule 3.4 of the Arkansas Rules of Criminal Procedure."[1] The circuit court found that the evidence did "not indicate that the officers who detained [Cherry] reasonably suspected that [Cherry] was armed and presently dangerous to the officers or others." Accordingly, the circuit court concluded that the "predicate ground for a 'pat down' search under Rule 3.4 had not been established." The circuit court further found that Cherry "did not grant consent to an interior search," and "Rule 3.4 does not authorize a search of the interior of the clothing, if there is no basis for believing, from the 'pat-down' search, that there is 'any weapon or other dangerous thing

---

[1] Strictly speaking, the situation that this appeal concerns is not an investigatory stop as contemplated by Rule 3.1 of the Arkansas Rules of Criminal Procedure. Rule 3.1 states:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

Rather, this case involved a stop for a traffic offense—operating an unregistered motor vehicle—committed in the presence of a law enforcement officer. It is the very situation contemplated by the Supreme Court in *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330 (1977), when it held that a pat down for officer safety comported with the Fourth Amendment so long as the officer has reason to believe the driver or passenger is armed and dangerous.

which may be used against the officer or others.'" The circuit court stated, "An officer cannot absolve himself of the obligation not to intrude into the person of an individual who has been detained by using the pretext of officer safety for the purpose of engaging in what amounts to a search for contraband." The circuit court concluded its order by stating, "To say that the defendant consented to what amounts to a pretextual search is to allow the consent exception to swallow the Fourth Amendment."

On appeal, the State argues that the circuit court erred as a matter of law by concluding that consent does not satisfy the Fourth Amendment and, consequently, adding reasonable suspicion as a prerequisite to a valid consent to search under Arkansas Rule of Criminal Procedure 11.1. The State asserts that Rule 11.1 allows a police officer to conduct a search of an individual's person without a search warrant or other color of authority if the individual consents to the search.

Prior to examining the merits of any State appeal, we must first determine whether it is a proper State appeal. *State v. Tyson*, 2012 Ark. 107, 388 S.W.3d 1. Arkansas Rule of Appellate Procedure–Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence [.]" *State v. Threadgill*, 2011 Ark. 91, 382 S.W.3d 657 (citing Ark. R. App. P.–Crim. 3(a)(1) (2011)). The Rule further states:

> (d) The Supreme Court will not consider an appeal filed under either subsection (a)(1) or (2) or subsection (b) of this rule unless the correct and uniform administration of the criminal law requires review by the court.

Ark. R. App. P.–Crim. 3(d).  While a criminal defendant has a constitutional right to appeal, appeals in criminal matters brought by the State are authorized only by Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal.  *State v. Jones*, 2012 Ark. 454.  In addition, we accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law.  *Id.*

Typically, this court decides appeals brought by the State in criminal cases only when the issue is "narrow in scope" and involves the interpretation of law.  *Threadgill*, 2011 Ark. 91, 382 S.W.3d 657.  We do not permit state appeals merely to demonstrate the fact that the circuit court erred.  *Id.*  Accordingly, we dismiss those appeals that do not present an issue of interpretation of the criminal rules with widespread ramifications, or those appeals where the resolution of the issue turns on the facts unique to the case or involve a mixed question of law and fact.  *Id.*  Additionally, when an appeal merely raises an issue of the application, not interpretation, of a criminal rule or statutory provision, we deem it to not involve the correct and uniform administration of the criminal law and thus not within the ambit of permissible State appeals under Rule 3.  *Id.*

Despite the State's attempt at framing the issue here as one solely involving an error of law, the issue is the voluntariness of a consent to search, which is a question of fact.  We note that while both Pasmen and Smith testified that Cherry had consented to the patdown, only Pasmen claimed that Cherry had also consented to a search of his pockets.  This important difference in the testimony of the two police officers does not support the State's assertion that there was no dispute regarding whether Cherry consented to the search of the

interior of his pockets. Moreover, the circuit court was not required to believe Pasmen's testimony. In suppression cases, we have said that "it is the circuit court that will be the ultimate arbiter of credibility." *Jackson v. State*, 2013 Ark. 201, ___ S.W.3d ___. Accordingly, inasmuch as the circuit court's written order states that Cherry "did not grant consent to an interior search," we interpret this sentence to be a finding of historical fact.

In the same paragraph of the order containing the finding that Cherry did not consent to an interior search of his pockets, the circuit court goes on to make an additional finding that Pasmen reported nothing that he felt in the patdown indicated that there was "any weapon or other dangerous thing which may be used against the officer or others." Accordingly, an alternative basis for justifying the interior pocket search was foreclosed.

As this appeal involves only disputed factual findings, we hold that it is not a proper State appeal.

Appeal dismissed.

*William R. Simpson, Jr.*, Public Defender, Deputy Public Defender, by: *Clint Miller*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kathryn Henry*, Ass't Att'y Gen., for appellee.