2009 Ark. 630

**STATE of Arkansas, Appellant,**

v.

**Mikel SHORT, Appellee.**

**No. CR 09–670.**

Supreme Court of Arkansas.

Dec. 17, 2009.

Dustin McDaniel, Att'y Gen., by: David R. Raupp, Senior Ass't Att'y Gen., for appellant.

Llewellyn J. Marczuk, Baxter County Public Defender, Little Rock, for appellee.

ROBERT L. BROWN, Justice.

The State appeals the grant of a new trial to appellee Mikel Short on grounds that Arkansas law was not violated by the failure to pose a juror's question to the judge in open court. We disagree that this is an appropriate issue for a State appeal, and we dismiss.

On February 26, 2009, Mikel Short was convicted by a Baxter County jury of possession of a controlled substance, methamphetamine, and was sentenced to 120

months' imprisonment in the Arkansas Department of Correction. Circuit Judge John Putman presided over the trial. After the sentence, Short's attorney filed a motion for a mistrial on grounds that the jury had notified the bailiff of a question during its deliberations and that the question was never presented to the judge in open court.

Short subsequently filed a motion for a new trial under Arkansas Rule of Criminal Procedure 33.3 on the same grounds. This motion expressly alleged that the bailiff, Jim |₂Boatwright, had spoken to Short's attorney after the trial and stated that the jury had a question during its deliberations that "should have been addressed by the Court" but was not. The motion also alleged that the court reporter had "addressed at some level" the issue of the jury's question. Because the judge's regular court reporter, Linda Adams, could be called as a witness in the matter, Judge Putman recused from hearing Short's motion for a new trial. Circuit Judge Gordon Webb took over the case and proceeded to consider the motion.

On March 24, 2009, Short filed supplemental grounds in support of his mistrial motion and specifically contended that Arkansas Code Annotated section 16–89–125(e) (2005) had been violated. The judge held a hearing on Short's motion at which Jim Boatwright, the bailiff; Linda Adams, the court reporter; and Joseph Salisbury, the jury foreman, all testified. The judge also heard arguments from the attorneys, after which he announced his intention to grant Short's new-trial motion. An order to that effect was entered on March 31, 2009.

The State now appeals and contends that section 16–89–125(e) is not violated when the jury is, in fact, conducted into open court, in the presence of the defendant and counsel for the parties, for the purpose of asking questions and obtaining information. The Attorney General has certified that error was committed by the circuit court and that the correct and uniform administration of the criminal law requires review by this court, as provided by Arkansas Rule of Appellate Procedure–Criminal 3(c).

The law on questions posed by a jury is clear. Section 16–89–125(e) reads,

ᵇAfter the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of or after notice to the counsel of the parties.

Ark.Code Ann. § 16–89–125(e) (Repl.2005).

▮ It is likewise clear that while criminal defendants may appeal their convictions as a matter of right, the State may only appeal under the constraints of Arkansas Rule of Appellate Procedure–Criminal 3. *See, e.g., State v. Nichols,* 364 Ark. 1, 4, 216 S.W.3d 114, 116 (2005). When the Attorney General "is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal" to this court. Ark. R.App. P.-Crim. 3(c) (2009). This court, however, has also made it clear that where we do not agree with the State that the correct and uniform administration of justice is at issue, we will dismiss the appeal. *See, e.g., State v. Harris,* 315 Ark. 595, 868 S.W.2d 488 (1994).

▮ According to this court's jurisprudence, as developed over the years, we only take state appeals that are narrow in scope and involve the interpretation of the

law. *See, e.g., Nichols,* 364 Ark. at 4, 216 S.W.3d at 116; *see also State v. Guthrie,* 341 Ark. 624, 628, 19 S.W.3d 10, 13 (2000) (quoting *State v. Stephenson,* 330 Ark. 594, 595, 955 S.W.2d 518, 519 (1997)). We do not permit State appeals merely to show that the trial judge erred. *Nichols,* 364 Ark. at 4, 216 S.W.3d at 116. Where the resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter, as a consequence, is not appealable by the State. *Id.* We have also said that this court will not accept even mixed questions of law and fact on appeal by the State. *See, e.g., State v. McCormack,* 343 Ark. 285, 289, 34 S.W.3d 735, 737–38 (2000). Moreover, where an appeal raises the issue of an application of the law to the facts, and not an interpretation of a statutory provision, we have said that it does not involve the correct and uniform administration of the criminal law. *Id.,* 34 S.W.3d at 738.

Even though Short does not raise the propriety of the State's appeal under Rule 3(c) in the instant case, we must first determine whether the issue presented by the State for review is merely an issue of application of the law to the facts of this case or an issue of statutory interpretation. *See Nichols,* 364 Ark. at 3, 216 S.W.3d at 116 (The court must consider whether it has jurisdiction of the State's appeal even when the parties do not mention the issue in their briefs.). The State frames its point on appeal as: "The Trial Court Erred By Granting Appellee's Motion for a New Trial Because Ark.Code Ann. § 16–89–125(e) Was Not Violated." To determine whether this is a proper issue for resolution in a State appeal, we turn to the March 31, 2009 hearing on Short's motion.

Jim Boatwright, the bailiff at Short's trial, testified first. He told the court that after the jury retired for deliberations, he was summoned to the jury room by a knock at the door. He testified that he knocked on the jury-room door, and a woman juror answered and said, "We have a question." He went on to testify that he asked whether the jury had selected a foreman, and "everybody pointed to the gentleman that is in this courtroom" [Joseph Salisbury]. Boatwright stated that Salisbury said that the jury could not locate some documents that they thought should have been included in the exhibits. Boatwright told the court that he answered, "You should have all of the exhibits that were introduced into evidence in the court."

At that time, the juror who had answered the jury-room door said to Boatwright, "I have a question ... could we have a transcript of ... of Nikki Rail's testimony?"[1] According to Boatwright, he responded, "Well, I don't think so, I don't believe so," or "words to that effect" and explained that he "didn't think that we routinely prepared transcripts of testimony until a matter of days or weeks after the trial." Then, Salisbury apparently again said that he could not find what he believed to be five pages of missing evidence. Boatwright stated that he told "the jury at large to remain [in the jury room] and I'll go and get the judge, which I did."

It is undisputed that when the jury was conducted into open court, Salisbury asked the judge about the five missing pages of evidence, but it is also undisputed that no one asked the judge about whether the

---

1. Rail was an investigator for the Baxter County Sheriff's Office when Short was arrested. She testified that she found methamphetamine under the passenger seat of an automobile. Short was the passenger in that vehicle.

jury could have a transcript of Nikki Rail's testimony. During the hearing on Short's motion for a new trial, Boatwright testified that he "was disappointed that [he] hadn't had the chance to bring that question to Judge Putman's attention." He said that after the jury had returned to the jury room, he "mentioned to the court reporter, Linda Adams, that there had been another juror—individual juror had a question about transcript availability." He then asked her where the judge was, and she said he had gone to lunch. Boatwright testified that he never told Judge Putnam about the second jury question. On cross-examination, Boatwright testified that he "would never attempt to answer" the jury's questions.

After Boatwright's testimony, the State moved to dismiss Short's motion on grounds that he was required to prove prejudice and had failed to do so. The prosecutor specifically contended that section 16–89–125(e) was complied with and that "[o]nce a jury is brought in, they have a right to address the court of any questions they have. And if they forget a question, that doesn't give rise to any sort of misconduct." Short's attorney responded that he was not required to show prejudice but only that there was a substantive question from the jury that the bailiff knew of and did not bring to the attention of the court. The judge denied the State's motion to dismiss and found that "there is a substantial issue here."

The judge next heard from Linda Adams, the court reporter at Short's trial. She told the judge that the jury foreman asked a question about whether a witness's arrest record was received into evidence and that the judge answered the question. She testified that the transcript of the discussion between the judge and the jury was accurate. Ms. Adams also said that, after the jury returned to the deliberation room, Boatwright said to her that "he was surprised that they [the jurors] didn't ask the second question that they had." Adams testified that she did not pass this question on to the judge.

The final witness was Joseph Salisbury, the jury foreman. He told the judge that he did not hear Boatwright answer or attempt to answer any question from the jury; that Boatwright did not comment on any fact, evidence, or point of law to any member of the jury; that Boatwright did not make any comment to the jury that he considered to bring extraneous evidence before the jury; and that Boatwright was not a factor in the jury's deliberations. Salisbury also testified that the jury had sufficient opportunity to ask the judge its questions.

At this point, the State renewed its motion to dismiss Short's motion for a new trial. The State first claimed that the individual juror's "inquiry" did not constitute a "question" because only jury panels are permitted to ask questions. The State also argued that Boatwright did not answer any question by that juror and, regardless, Short was required to prove that he was prejudiced by any misconduct on the part of the jury or of Boatwright. The prosecutor told the judge: "Again, someone said can I see a transcript. A juror said that. Mr. Boatwright stepped back, addressed the panel, said we need to go get a judge, 16–89–125(e) was followed to the letter." The State also asserted that Boatwright's response to the woman juror's question was, "I don't know . . . I'm going to go get a judge."

Short's counsel answered: "The key issue right here is that Mr. Boatwright did respond when inquiring about the testimony or transcript of Nickie [Nikki] Rail, he answered that question for them . . . [e]ffectively slamming the door on that inquiry." Later in his argument, Short's coun-

sel maintained that "Mr. Boatwright should have said I'll take you out and you can ask those questions to the judge [sic] what he said was, I don't think transcripts are available until later on, or words to that effect." The State immediately responded and claimed that was not what "Mr. Boatwright's response was," but instead argued that he said, "I'll go get the judge." The State went on to contend that it would have been prejudicial error for Mr. Boatwright to get the judge and tell him that there had been another question. According to the State, "it's certainly not the Court's place to impose a question on the jury that they don't ask."

Following this argument, the judge announced his ruling: "The Court is going to grant the defense motion for a new trial based on the fact that the Court finds that there was a statement made in the jury room by Mr. Boatwright that had the effect of in essence, answering a question." The judge also held that by answering the question in the way he did, "Mr. Boatwright's statement apparently, brought an end to the question" of whether the transcripts where available. The judge also noted that if Boatwright had "just said, 'I'll have to ask the Judge,' then the question may well have been brought up to the judge," who could have informed the jury that, while the transcript was not available, the testimony could be replayed in open court. The judge also said that "[b]y saying there wasn't a transcript available, he [Boatwright] in essence conveyed the idea to the jury that they couldn't review the testimony."

This court has previously addressed the issue of a bailiff's response to a question from the jury. *See Williams v. State,* 264 Ark. 77, 568 S.W.2d 30 (1978) (interpreting the former version of section 16–89–125(e), Ark. Stat. Ann. § 43–2139 (Repl.1964)).

In *Williams v. State,* this court reversed the trial judge's order which denied a criminal defendant's motion to set aside the verdict. The motion was based on allegations that the bailiff responded to the jury on a question of law. More specifically, the bailiff testified that after the jury had retired for deliberation, the foreman told him that it had been discovered that one of the jurors was a friend of one of the witnesses. The bailiff told the judge that he responded to the foreman, "Well, it's too late to do anything about it now." After hearing the testimony, the judge denied Williams's motion to set aside the verdict.

This court reversed, relying on Ark. Stat. Ann. § 43–2139 (Repl.1964), the former version of section 16–89–125(e).[2] The *Williams* court held as follows:

The inquiry made by the foreman of the jury was certainly a request for information on a point of law. The failure of the foreman to require the bailiff to conduct the jury into court was itself contrary to the statute and constituted misconduct, even though it was an innocent omission. The obvious good intentions of the bailiff and the foreman of the jury cannot excuse noncompliance with the statute. Even if, under the circumstances of the case, the bailiff's answer might have been shown to be correct, the impropriety is not excused. In effect, the bailiff assumed the power to answer an inquiry on a question of law which should have been answered only by the judge.

264 Ark. at 80, 568 S.W.2d at 31 (internal citations omitted). The *Williams* court then restated that noncompliance with the statute gives rise to a presumption of prejudice that is not easily overcome. *Id.*

Our review of the *Williams* case and a second decision handed down by this

---

court three years later, *Wilson v. State*, 272 Ark. 361, 614 S.W.2d 663 (1981), convinces us that the law is settled on the impropriety of a bailiff's responding to legal questions posed by a jury. Furthermore, our lengthy review of the March 31, 2009 hearing makes it clear that this factual scenario does not bring into play an issue involving the correct and uniform administration of the criminal law under Appellate Rule 3(c). The State attempts to persuade us that the issue involves the interpretation of section 16–89–125(e) because the judge's holding effectively imposed a duty on the bailiff that does not exist in the statutory language. Despite this contention, the arguments at the hearing before the trial judge, and the judge's ruling, turned instead on the issue of whether Boatwright, in fact, answered a juror's question. The State, in addition, belies its assertion that it is presenting on appeal an issue of statutory interpretation, when it claims in its brief that Boatwright's "tentative response was not an answer to the juror's question which foreclosed further inquiry." That was a fact question for the judge, and, while the State clearly disagrees with the judge's finding on this point, it does not present a proper issue for a State appeal.

In short, the law on this subject is clear, and resolution of the issue at hand turned on whether the judge was convinced that Boatwright had answered a juror's legal question. The judge found that he effectively had. We see no issue in this case that concerns the correct and uniform administration of the criminal law. Accordingly, we dismiss the appeal.

Appeal dismissed.

IMBER, J., not participating.