SLIP OPINION

Cite as 2015 Ark. 309

# SUPREME COURT OF ARKANSAS

No. CR-03-905

| | |
|---|---|
| JEFFREY SCOTT RATCHFORD<br><div align="right">PETITIONER</div> | **Opinion Delivered** July 23, 2015 |
| V. | PRO SE SECOND PETITION TO REINVEST JURISDICTION IN THE CIRCUIT COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS |
| STATE OF ARKANSAS<br><div align="right">RESPONDENT</div> | [BENTON COUNTY CIRCUIT COURT, NO. 04CR-01-1011] |
| | PETITION DENIED. |

**PER CURIAM**

In 2002, petitioner Jeffrey Scott Ratchford was found guilty by a jury of the rape of a child less than fourteen years of age. The victim was S. R., his thirteen-year-old daughter. He was also found guilty of two counts of sexual assault in the first degree in which the victims were S. R. and Ratchford's twelve-year-old daughter, T. R. A life sentence was imposed on the rape charge and 120 months' imprisonment on each of the sexual-assault charges, with all sentences to be served concurrently. We affirmed the judgment as modified.[1] *Ratchford v. State*, 357 Ark. 27, 159 S.W.3d 304 (2004).

In 2014, Ratchford filed in this court a pro se petition to reinvest jurisdiction in the

---

[1]We noted that, while the judgment-and-commitment order correctly reflected that Ratchford was convicted and sentenced for one count of rape and two counts of sexual abuse in the first degree, the order incorrectly stated that Ratchford was convicted and sentenced for a total of two offenses. This court modified the order to reflect a total of three offenses.

SLIP OPINION

circuit court to consider a petition for writ of error coram nobis.[2] A petition for leave to proceed in the circuit court is necessary because the circuit court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61.

A writ of error coram nobis is an extraordinarily rare remedy more known for its denial than its approval. *Id.* Coram-nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the circuit court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Id.* The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* We have held that a writ of error coram nobis is available to address certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Coulter v. State*, 365 Ark. 262, 227 S.W.3d 904 (2006).

As grounds for the writ in the 2014 petition, Ratchford asserted that material evidence was withheld from him in violation of *Brady v. Maryland*, 373 U.S. 93 (1963). While couched as

---

[2]The petition was assigned the same docket number as the direct appeal from the judgment of conviction.

SLIP OPINION

a claim of a *Brady* violation, which does fall within one of the four categories warranting coram-nobis relief, this court found that Ratchford's claim was actually one of ineffective assistance of counsel, a claim that is not cognizable in a coram-nobis proceeding. *Ratchford v. State*, 2014 Ark. 452 (per curiam). We further declined to accept Ratchford's alternative requests for relief in the 2014 petition, i.e. that this court issue a writ of certiorari to reopen his direct appeal, recall the mandate in his direct appeal, or order the State to re-offer a plea bargain so that he could accept it. *Id.*

On May 1, 2015, Ratchford filed a second pro se petition to reinvest jurisdiction to proceed with a coram-nobis petition, which is now before us. In the second petition, he contends that, in December 2013, he obtained new evidence of a *Brady* violation that shows that the verdict in his case was obtained by perjured testimony.[3] To understand the *Brady* claim, it is necessary to summarize the evidence adduced at trial on the charge of the rape of S. R.

S. R. testified that Ratchford had touched her "lower private" with his tongue and that "more than ten times," he put his "lower private," which was her term for penis, "into my private." There was no medical evidence presented concerning whether the penetration was sufficient to have ruptured the hymen.

In accordance with Arkansas Code Annotated section 5-14-103(a)(4) (Repl. 1997) (superseded by Ark. Code Ann. § 5-14-103(a)(1)(C)(i) (Supp. 2001)), the jury was instructed that

---

[3]Ratchford also refers to a plea bargain that his attorney allegedly failed to communicate to him. He acknowledges that this court has already declined to grant relief on that claim when his first coram-nobis petition was denied and states that his current petition does not raise that allegation again.

the offense of rape could be proven by evidence that the defendant engaged in sexual intercourse or deviate sexual activity with the victim. "Sexual intercourse" was defined in the jury instructions as penetration, however slight, of the labia majora by a penis. "Deviate sexual activity" was defined as any act of sexual gratification involving the penetration, however slight, of the of the anus or mouth of one person by the penis of any other person or the penetration, however slight, of the labia majora of one person by any body member of another person.

The newly discovered evidence that Ratchford states was obtained in 2013 consists of the State's knowledge of a physical examination of S. R., conducted in Michigan in June 2001, which was eighteen months before his 2002 trial, and the report of that examination. He alleges that the report constituted proof that S. R. could not have been raped repeatedly because there were no physical signs of rape observed by the examiner even though Ratchford is a large man who weighed nearly four hundred pounds at the time in question. Ratchford argues that this report was not contained in the State's file that was made available to the defense, that the report was exculpatory, and that it could have been used to cast doubt on the credibility of S. R. and other witnesses.

As substantiation for the claim that there was such a report and that it was available to the State, Ratchford has appended to his petition a copy of a document captioned, "Family Independence Agency of Michigan Protective Services Investigation Summary," dated June 2001, which indicates that a medical examination was conducted on S. R. by a Certified Nurse Practitioner. The report states that the examiner found the hymen to be present and no sign of physical injury to the genitals or anus. The report also states that, with respect to suspected

sexual molestation, the examiner found that S. R.'s "allegations and presentation are very convincing to this examiner."

Ratchford also appended to his petition a copy of the affidavit of attorney Mark Hampton who represented him in postconviction proceedings, verified July 21, 2014, in which Hampton avers that in 2004 he requested from the prosecutor's office a copy of the State's entire file on his case as well as product information. Hampton further states in the affidavit his belief that he did not receive the entire file at that time and that, in 2006, Ratchford had written him a letter with a copy of the 2001 medical report from Michigan enclosed. Hampton states in the affidavit that he had not seen that medical report in the prosecutor's file. Ratchford further alleges that attorney Craig Lambert obtained access to the prosecutor's file in December 2013 and that the files Hampton received did not match those discovered in 2013. Ratchford asserts that this proves that the State knew of the medical report before trial and did not disclose it.

In its response to the coram-nobis petition, the State urges this court to deny it as an abuse of the writ because Ratchford clearly had the medical report in 2006 and had Hampton's July 2014 affidavit when he filed his first coram-nobis petition in this court in August 2014. (A copy of Hampton's affidavit was also appended to the first coram-nobis petition filed by Ratchford.) The State argues that indulging Ratchford in a second petition when he could have raised the claim in his first petition encourages piecemeal litigation of coram-nobis claims.

The State also contends that the petition should be denied for want of diligence inasmuch as Ratchford had provided Hampton with a copy of the medical report in 2006, indicating that

SLIP OPINION

he knew about it at that time. Additionally, the State asserts that there is no proof that the report was actually hidden from the defense at trial and, in any event, the report would not have undermined the victim's credibility to the extent Ratchford alleges because physical evidence is not necessary to sustain a conviction for rape.

We find that Ratchford has not been diligent in bringing his claim concerning the 2001 medical report. The claim could have been brought nine years ago in 2006, and it could also have been raised in Ratchford's first coram-nobis petition filed in this court in August 2014. Although there is no specific time limit for seeking a writ of error coram nobis, due diligence is required in making an application for relief, and, in the absence of a valid excuse for delay, the petition will be denied. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771. Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition. *Id.* The requirements are a sequence of events, each of which a petitioner must show to prove due diligence. *Anderson v. State*, 2012 Ark. 270, 423 S.W.3d 20 (per curiam). The requirement that a petitioner proceed with due diligence is longstanding because coram-nobis relief is grounded on the need for the petitioner to proceed with the petition when the claim for relief is first known. *See Philyaw v. State*, 2014 Ark. 130 (per curiam). Otherwise, the finality of judgments on which society relies is undermined. *See Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984).

In addition to his failure to bring all allegations in his first coram-nobis petition and his failure to exercise diligence in bringing his claim concerning the 2001 report, Ratchford has not

6

SLIP OPINION

established a *Brady* violation. A *Brady* violation is established when evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407. One shows a *Brady* violation by demonstrating that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Kyles v. Whitley*, 514 U.S. 419, 419 (1995).

Here, it is clear that the report, even if it had been in the hands of the defense at trial, would not have been sufficient to undermine confidence in the verdict. As stated, there was evidence of penetration of the labia of the victim. The offense of rape was thus established regardless of whether the hymen was affected or there were other physical signs of intercourse. The testimony of a rape victim, standing by itself, constitutes sufficient evidence to support a conviction. *McDuffy v. State*, 359 Ark. 180, 186, 196 S.W.3d 12, 15 (2004).

Petition denied.