SLIP OPINION

Cite as 2017 Ark. 9

# SUPREME COURT OF ARKANSAS
No. CR-97-401

| | |
|---|---|
| WILLIE GASTER DAVIS, JR.<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** January 19, 2017<br><br>PRO SE SECOND PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS<br>[DESHA COUNTY CIRCUIT COURT, NO. 21CR-95-110]<br><br>PETITION DENIED. |

**PER CURIAM**

In 1996, petitioner Willie Gaster Davis, Jr. was found guilty by a jury of first-degree murder, theft of property, and false imprisonment. He was sentenced to an aggregate term of life imprisonment. We affirmed. *Davis v. State*, 330 Ark. 76, 953 S.W.2d 559 (1997).

In 2007, Davis filed in this court a pro se petition to reinvest jurisdiction in the trial court in the case to consider a petition for writ of error coram nobis. The petition was denied. *Davis v. State*, CR-97-401 (Ark. Jan. 31, 2008) (unpublished per curiam), *reh'g denied*. (Ark. Apr. 10, 2008).

Now before us is Davis's second coram-nobis petition filed October 19, 2016. The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Newman v. State*, 2009 Ark. 539, 354 S.W.3d 61. A writ of error coram nobis is an extraordinarily rare remedy. *State v. Larimore*, 341 Ark. 397,

SLIP OPINION

17 S.W.3d 87 (2000). Coram–nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id.* The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Newman*, 2009 Ark. 539, 354 S.W.3d 61. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Roberts v. State*, 2013 Ark. 56, 425 S.W.3d 771.

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

In his 2007 petition, Davis asserted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). A *Brady* violation is established when material evidence favorable to the defense is wrongfully withheld by the State. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court revisited *Brady* and declared that when the petitioner contends that material evidence was not disclosed to the defense, the petitioner must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

SLIP OPINION

In *Strickler*, the Court also set out the three elements of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler*, 527 U.S. 263; *see Howard*, 2012 Ark. 177, 403 S.W.3d 38. Impeachment evidence that is material, as well as exculpatory evidence, falls within the *Brady* rule. *Bagley*, 473 U.S. 667.

The *Brady* violation alleged by Davis in the 2007 petition was his contention that certain evidence and a laboratory report had been withheld from the defense at his trial. The evidence concerned the absence of his hair on the victim or the lack of a match of hairs found on the victim to him. The report, by a fingerprint examiner, concerned fingerprints, or the lack of them, on the victim's keys. This court held that Davis had not established a *Brady* violation in that he had not asserted that the evidence at issue was withheld from the defense; he argued only that it had not been presented to the jury at trial or was never developed through testing. Also, Davis did not present facts to support his claim to satisfy the second element of a *Brady* violation. Moreover, even if withheld, the evidence that Davis portrayed as exculpatory would not have prevented the judgment had it been disclosed, considering the evidence adduced at trial and contained in Davis's own description of the events pertaining to the offenses. *Davis*, CR 97-401, slip op. at 2. We noted in the opinion declining to grant leave to proceed in the trial court with a coram-nobis petition that, if testing had failed to identify Davis's fingerprints or hair, or testing had shown the hairs or any fingerprints belonged to another individual, and that evidence had been presented to the jury, the evidence would not have served to raise a reasonable

probability that the judgment of conviction would not have been rendered. Davis's having been in the car with the victim and his proximity to her at the house where her body was found were well established by the evidence, regardless of any contact the victim or her keys may have had with another person. The fact that someone else had handled the keys or had left hairs on the victim would not have implicated another person in the murder or cast any doubt on the inferences to be drawn from Davis's interactions with the victim as portrayed in the testimony. *Davis*, CR 97–401, slip op. at 2.

In his second petition, Davis again contends that the State violated *Brady*. He reiterates some of the grounds considered by this court in the first petition. He also asserts that the State withheld seventeen cigarette butts collected at the crime scene and did not submit those cigarette butts for DNA testing and that the State's action constituted the withholding of information from the defense that persons other than he were at the crime scene. Davis points to testimony at trial that no lighted cigarettes were found at the scene to suggest that the cigarettes found at the scene were significant evidence.

Davis further alleges that the State withheld hair-analysis evidence. Davis concedes that he presented this claim in his first petition to this court and that it was rejected as a ground for the writ. He argues that it should be considered again because he now has proof that the evidence was material and that he was prejudiced by the actions of the State. Davis alleges that he discovered the evidence when this court directed the Arkansas State Crime Laboratory to release certain information that Davis had requested pursuant to Arkansas Code Annotated section 12-12-312 (Repl. 2003). *See Davis v. Deen*, 2014 Ark. 313, at 3, 437 S.W.3d 694, 695.

In its response to this second coram-nobis petition, the State argues that, although Davis may have acquired information as a result of his requests for written material in recent litigation, it does not excuse his delay of almost twenty years in seeking the information. The State further urges this court to dismiss the petition as an abuse of the writ because it is dubious that Davis could not have been aware, by examining the discovery information obtained at trial in 1996, that cigarette butts were collected at the scene at the same time the hairs were collected. The State contends that the claim concerning the cigarette butts could have been raised in Davis's first coram-nobis petition if he had been more diligent. The State also asserts that the totality of the evidence demonstrates that the outcome of the trial would not have been different had there been evidence introduced at trial that cigarette butts were collected at the crime scene because there was evidence that many people had been known to frequent the house where the victim's body was found.

We do not find that Davis has established a *Brady* violation. Even if Davis had provided facts to show that there was evidence withheld by the State, and we cannot say that he has done so, he has not demonstrated with those facts that there is a reasonable probability that the outcome of the trial would have been different had that evidence been available at trial. At most, Davis has suggested that the presence of multiple cigarette butts at the house would have shown that many people had been at the residence. As there was testimony that the house was in disarray, the circumstances do not suggest that the presence of multiple cigarette butts would be pertinent to the ultimate issue of Davis's guilt or innocence.

SLIP OPINION

Witness Traci Noble testified at Davis's trial that on April 21, 1995, she and the victim, Nikki Muse, were driving in Dumas when some boys on a street corner flagged them down. Noble and Muse allowed the three boys to enter the backseat of the vehicle, and Noble and Muse said that they were looking for a man named Madden. Noble testified that the three boys led them to a dead-end street. The boy seated on Noble's side of the car pulled her out of the car, grabbed the gold chains she was wearing, and demanded her money. Noble testified that the boy on Muse's side of the vehicle "[did] the same thing with her, Nikki." Noble later identified the man behind her who took her chains as Willie Spencer. She thought the boy in the middle, who ran away, was named Bryan. The third boy, who was identified as Davis, pushed Muse into the passenger seat, got into the driver's seat, and drove away. Noble saw Davis demand money from Muse, who in turn gave money to him. Noble testified that there was no doubt in her mind that Muse did not want to go with Davis and that she never saw Muse alive again. Noble made an in-court identification of Davis as the man who demanded money from Muse and drove away with her. After Noble managed to escape from Spencer, she contacted the police. At the police station, Noble was shown a photo lineup and identified Davis as the man who drove off with Muse.

Spencer testified that on April 21, 1995, he was standing around with Willie Davis and Bryan Woods on a street in Dumas. He said that two girls approached them driving a white car and that Noble asked them if they wanted to go riding and if they knew where Madden lived. The boys got into the backseat of car and directed the girls to a dead-end street where Spencer grabbed Noble and took her chains. Woods then ran away. Spencer

testified that he demanded money from Noble, but that he returned her chains to her. Spencer saw Davis get out of the car, telling Muse "to scoot over," adding that Davis "[m]ight of did choke [Muse]." Spencer was then presented with his testimony from his own trial, where he testified that Davis "wasn't acting right. As soon as the car stopped . . . he said this is a robbery and he just grabbed her." Spencer also testified that he knew that Muse did not want to leave with Davis, and that it was Davis who directed the girls to the street where they stopped. A police officer found a vehicle matching the description of the missing white car parked in front of a house. Inside the house, police discovered Davis, who appeared to be asleep, on a couch with Muse sprawled beside him on the couch. Muse was dead with blood coming from her vaginal and anal areas. At this time, Davis came up off the couch and said, "Did you get the other two." When asked who he was talking about, he said, "Willie Spencer and Bryant [sic]. They left with the other girl." While in custody, Davis gave a statement that was admitted at trial. In the statement, Davis admitted that he told Muse to give him the money that she had and that he told her to move to the passenger seat of the car. Davis said that they rode around looking for Noble and Spencer and that Muse later consented to having sex. The medical examiner testified that Muse had neck injuries consistent with manual strangulation and that her injuries also suggested that she had been sexually assaulted. *See Davis*, 330 Ark. at 78–80, 953 S.W.2d at 560–61.

When considering a *Brady* violation, we look at the significance of the evidence that was alleged to have been concealed from the defense weighed against the totality of the evidence to determine if the evidence at issue would have been such as to have prevented rendition of the judgment had the evidence been available at the time of trial. *Smith v.*

*State*, 2015 Ark. 188, 461 S.W.3d 345 (per curiam); *Goff v. State*, 2012 Ark. 68, 398 S.W.3d 896 (per curiam); *Sanders v. State*, 2011 Ark. 199 (per curiam). We further consider the cumulative effect of the allegedly suppressed evidence to determine whether the evidence that was alleged to have been suppressed was material to the guilt or punishment of the defendant. *Goff*, 2012 Ark. 68, 398 S.W.3d 896. Here, the evidence adduced at trial was sufficient to establish that Davis had committed the offenses. His claim of a *Brady* violation does not establish that there was evidence withheld to meet the threshold requirements of a *Brady* violation that was both material and prejudicial such as to have prevented rendition of the judgment had it been known at the time of trial. It is the petitioner's burden to demonstrate that there is a reasonable probability that the judgment of conviction would not have been rendered, or would have been prevented, had the information been disclosed at trial. *Wilson v. State*, 2014 Ark. 273 (per curiam).

With respect to the State's claim that this second petition constitutes an abuse of the writ, a court has the discretion to determine whether the renewal of a petitioner's application for the writ, when there are additional facts presented in support of the same grounds, will be permitted. *Swanigan v. State*, 2016 Ark. 109, at 3, 485 S.W.3d 695, 697 (per curiam). Due process does not require a court to entertain an unlimited number of petitions to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis in a particular case. *Grant v. State*, 2015 Ark. 323, at 5–6, 469 S.W.3d 356, 360 (per curiam). Even if it could be said that Davis has presented additional facts concerning the hairs and cigarette butts discovered as the result of his recent litigation to obtain all the records of the crime lab, we cannot say that he has stated cause to reinvest jurisdiction in the trial court to

consider a petition for writ of error coram nobis. One shows a *Brady* violation by demonstrating that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Ratchford v. State*, 2015 Ark. 309, at 7, 468 S.W.3d 274, 278–79 (per curiam), *cert. denied*, 136 S. Ct. 1460 (2016); *see also Kyles v. Whitley*, 514 U.S. 419 (1995). Davis has not made that showing.

Petition denied.