Cite as 2024 Ark. 158

# SUPREME COURT OF ARKANSAS
No. CR–24–185

|  |  |  |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered:** October 24, 2024 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION [NO. 60CR–23–359] |
| V. | | |
| LEE EARNEST CLARKS, 2ND | | HONORABLE CATHLEEN V. COMPTON, JUDGE |
| | APPELLEE | |
| | | REVERSED AND REMANDED. |

**RHONDA K. WOOD, Associate Justice**

This is a State appeal from a circuit court's order dismissing the State's five felony charges against Lee Earnest Clarks, 2nd (Clarks)[1]. The State contends the circuit court incorrectly placed the burden of proof on it when the defendant raised a denial-of-due-process claim for law enforcement's failure to preserve evidence. Because this appeal concerns the correct and uniform administration of criminal law, we find it is a proper State appeal. It is the defendant's burden of proof and for that and other reasons explained below, we reverse and remand.

## I. *Factual Background*

Clarks was driving a vehicle when he was stopped for running a stop sign. The officer smelled marijuana and eventually searched the vehicle and found marijuana,

---

[1]The circuit court's order referred to appellee as Lee Earnest Clark, Jr., and the felony information notes AKA Lee Clarks, AKA Lee Andrew Clarks, and AKA Lee Earnest Clarks.

methamphetamine, and drug paraphernalia. Marijuana and a firearm were found in a passenger's purse. Clark was charged as a habitual offender with simultaneous possession of a controlled substance (methamphetamine) while in possession of a firearm, possession of methamphetamine with purpose to deliver, possession of a firearm by certain persons ("felon-in-possession-of-a-firearm"), possession of marijuana with purpose to deliver, and possession of drug paraphernalia.

Clarks filed a motion for discovery that included a preservation of evidence request. Later, upon learning the State did not preserve mobile video recordings and body-worn camera video footage (video) evidence, Clarks filed a motion to dismiss the charges. The State admitted in its response to Clarks's motion that it does not have the video. It stated law enforcement's practice is to retain video for sixty days following an arrest, then it is deleted to make room for more storage. An assigned investigator must retrieve the video before the time expires, and this failed to occur. Following the motions, the circuit court conducted a hearing.

At the hearing, the arresting officer, Jalen Salam, testified that Clarks admitted having marijuana in the car and stated that the firearm in the purse did not belong to the female passenger. Clarks's brother, who was a passenger in the car, testified that he did not hear Clarks make an admission to the officer. It is undisputed that the arresting officer was wearing an active, functioning body camera during the stop. According to Officer Salam, he did not have any dealings with the video after the arrest, He testified that usually narcotics officers save the video because they "finish the file." The State conceded that despite Clarks's motion to preserve all evidence, the video was overwritten after 60 days in accordance with

Little Rock Police Department standard procedures. The circuit court granted Clarks's motion to dismiss all charges. The State appeals.

## II. *State Appeal*

First, we determine whether we have jurisdiction to hear the State's appeal. The State can appeal adverse rulings only if they comply with Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *State v. Ledwell*, 2017 Ark. 252, at 3, 526 S.W.3d 1, 3. One permissible State appeal is "after entry of a final order by the trial judge." Ark. R. App. P.–Crim. 3(b) (2020). But these State appeals must also involve the "correct and uniform administration of the criminal law [which] requires review by the court." Ark. R. App. P.–Crim. 3(d) (2020); *see, e.g.*, *Ledwell*, 2017 Ark. 252 at 3–4, 526 S.W.3d at 3; *State v. Higginbotham*, 2020 Ark. 315, at 4–5, 612 S.W.3d 164, 167.

We find that this is a proper State appeal. We have not directly addressed the issue of law involving law enforcement's destruction of evidence despite a preservation motion. And we have limited case law on the subject. As such, our decision will have widespread application for the uniform administration of criminal law. *State v. Bailey*, 2024 Ark. 87, 687 S.W.3d 819. We review issues of law de novo on appeal. *Scissom v. State*, 367 Ark. 368, 369, 240 S.W.3d 100, 101 (2006). Thus, we proceed with the merits.

## III. *Legal Standard in Destruction-of-Evidence Cases*

In *Brady v. Maryland*, the Supreme Court recognized that the Due Process Clause is triggered when the prosecution has suppressed material exculpatory evidence. 373 U.S. 83 (1963). The defendant has the burden of proving a *Brady* violation. *T.C. v. State*, 2010 Ark. 240, at 17, 364 S.W.3d 53, 63; *Davis v. State*, 2017 Ark. 9, at 8, 507 S.W.3d 497, 502.

3

Yet when the issue was raised concerning evidence that had been lost or destroyed, the Court departed from the traditional *Brady* test. In *California v. Trombetta*, it explained that the "evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. 479, 489 (1984). Later, in *Arizona v. Youngblood*, the Court clarified that there is a distinction between material evidence and potentially exculpatory evidence:

> Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown, and very often, disputed. Part of it stems from our unwillingness to read . . . the Due Process Clause . . . as imposing on the police an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution.

488 U.S. 51, 57–58 (1988) (cleaned up). It added a bad-faith requirement in those circumstances:

> We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Youngblood*, 488 U.S. at 58. Yet courts were still confused about when to apply bad faith. In *Illinois v. Fisher*, the Court held that the routine destruction of potentially useful evidence subject to a pending discovery request did not demonstrate bad faith by police. 540 U.S. 544, 548 (2004).

> We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police. Indeed, the result reached in this case demonstrates why such a *per se* rule would negate the very reason we adopted the bad-faith requirement in the first place. . . . We also disagree that *Youngblood* does not apply whenever the contested evidence provides a defendant's only hope for exoneration and is essential to and determinative of the outcome of the case.

*Id.* (cleaned up). The Court explained "the applicability of the bad-faith requirement in *Youngblood* depended not on the centrality of the contested evidence to the prosecution's case or the defendant's defense, but on the distinction between 'material exculpatory' evidence and 'potentially useful' evidence." *Id.* at 549.

We considered bad faith in *Lee v. State*, 327 Ark. 692, 235, 942 S.W.2d 231, 700–01 (1997). The defendant argued that the obvious nature of the potential use of the evidence meant its destruction was done in bad faith. *Id.* But we rejected this and explained that bad faith requires more than innuendo. *Id.* We have held that bad faith includes official misconduct that shocks the conscience of the court or an officer's actions where the primary purpose is to seek revocation or harass a defendant. *Sherman v. State*, 2009 Ark. 275, at 9, 308 S.W.3d 614, 618. That law enforcement followed their standard operating procedures typically shows a lack of bad faith. *See Trombetta*, 467 U.S. at 488.

We take this opportunity to clarify the standard for courts to employ when the State loses or destroys evidence. The State violates the Due Process Clause when it destroys or loses material evidence (1) whose exculpatory value is apparent before destruction and (2) the defendant cannot obtain comparable evidence by any other reasonable means. *See Trombetta*, 467 U.S. at 489. This was the test we employed in

5

Wenzel v. State, 306 Ark. 527, 533, 815 S.W.2d 938, 941 (1991) (when the testing consumed all the semen evidence on the vaginal swabs, leaving none for the defense to test). The State also violates the Due Process Clause when it destroys or loses evidence (1) that was potentially useful in the defense's case and (2) the government acted in bad faith in the destruction of the evidence. *See Fisher*, 540 U.S. at 549. We notably applied the bad faith standard in *Lee* where the evidence was potentially useful.

IV. *Application*

Clarks moved to dismiss the charges against him, arguing that the State failed to preserve the video in violation of *Brady*. The State contended that any failure was unintentional and that Clarks proved neither that the video had exculpatory value nor that the State acted in bad faith. As to the burden of proof on the exculpatory nature of the video, the circuit court held that "the [State's] position that the burden of proving what was on the destroyed evidence is on the Defendant . . . that is an impermissible, impossible shifting of the burden from the State to the Defendant."

This was incorrect. As to the first test, the burden is on the defendant, not to prove what the destroyed evidence is, but to prove that the evidence was (1) material and had an exculpatory value that was apparent before its destruction and (2) that the defendant would be unable to obtain comparable evidence by reasonable means. Despite the burden shifting, the circuit court also failed to focus on whether there was any proof that the video had exculpatory value. For instance, how the video outside the vehicle would have shown that Clarks did not have drugs, paraphernalia, or a firearm in the vehicle. The focus instead was

6

on whether the footage would rebut any incriminating admissions alleged by the arresting officer. Its greatest usefulness was as potentially impeaching evidence, which may have been available by other means and witness testimony. Clarks failed to meet his burden on the first test.

The circuit court also erred in the application of the alternative test. Clarks argued that the video would contain potentially useful evidence for his defense in that it could impeach and rebut the arresting officer's testimony that Clarks made an admission. But that alone is not sufficient. Clarks also had to show that police deleted the video in bad faith.

The State is correct that the circuit court impermissibly held that Clarks did not have the burden of showing bad faith. The circuit court's apparent frustration was that Clarks filed a motion for preservation within days of the felony information. Neither party disputes this. Nor do they dispute the State's response that the video was unintentionally taped over. The circuit court determined that the State's unintentional omission, which is its failure to preserve the evidence when asked, equated to bad faith. The circuit court concluded: "The State may not have intentionally committed bad faith, but its omissions amount to bad faith for the purposes of this matter." But this is not the law.

The circuit court erred as a matter of law when it found that the unintentional deletion of the video, executed as part of the State's routine data management, was done in bad faith. *Lee*, 327 Ark. at 700–01. Bad faith is intentional, performed with a sinister motive. Unintentional or negligent omissions, with no record of misconduct or animus, cannot constitute bad faith. Nor does the existence of Clarks's pending discovery motion change

7

the character of the State's failure to preserve the evidence or negate the bad-faith requirement. *See Illinois*, 540 U.S. at 548.

The facts were undisputed that the evidence was destroyed unintentionally. While the parties may dispute what occurred at the time of the traffic stop and arrest, there is no evidence that either party watched the video or that its destruction was anything other than unintentional. As a matter of law, we hold that the State's failure to preserve evidence after Clarks filed a motion to preserve was not per se bad faith.

Last, we note that none of the cases cited mention the appropriate remedy if a Due Process violation is found. There may be occasions when conduct by law enforcement is so egregious that it warrants dismissal, but those should be outliers.

Reversed and remanded.

KEMP, C.J., and BAKER and HUDSON, JJ., dissent.

**JOHN DAN KEMP, Chief Justice, dissenting.** Because I cannot agree with the majority's holding that this is a proper State appeal pursuant to Arkansas Rule of Appellate Procedure –Criminal 3(d), I respectfully dissent.

Unlike that of a criminal defendant, the State's right to appeal is limited by the provisions of Rule 3 of the Arkansas Rules of Appellate Procedure –Criminal. *State v. Siegel*, 2018 Ark. 269, at 3, 555 S.W.3d 410, 412. Although Rule 3(b) allows the State to appeal following a misdemeanor or felony prosecution, we will not accept such an appeal unless the correct and uniform administration of the criminal law requires review by this court. Ark. R. App. P.–Crim. 3(d); *Siegel*, 2018 Ark. 269, at 3, 555 S.W.3d at 412. This court has said that the correct and uniform administration of justice is at issue when the question

presented is solely one of law independent of the facts in the case appealed. *State v. S.G.*, 373 Ark. 364, 366, 284 S.W.3d 62, 63 (2008). When the resolution of the issue on appeal turns on the facts unique to the case, the appeal does not require interpretation of our criminal rules with widespread ramifications; consequently, the matter, is not appealable by the State. *State v. Short*, 2009 Ark. 630, at 3–4, 361 S.W.3d 257, 259. We have also said that this court will not accept even mixed questions of law and fact on appeal by the State. *Id.* at 4, 361 S.W.3d at 259. State appeals are not allowed merely to demonstrate that the circuit court erred. *State v. Fuson*, 355 Ark. 652, 654, 144 S.W.3d 250, 252 (2004). When a State appeal involves the circuit court's application of the law rather than its interpretation, the appeal is not one that is important to the correct and uniform administration of the criminal law, and this court will dismiss it. *State v. K.H.*, 2010 Ark. 172, at 7, 368 S.W.3d 46, 50.

Here, I view the State's arguments for reversal as claims that the circuit court misapplied the law—specifically regarding burden of proof and bad faith—to the facts in this case. In its first point, the State argues that the circuit court refused to apply binding precedent and relieved Clarks of his burden to prove the video recordings possessed exculpatory value before they were inadvertently deleted. In its second point, the State asserts that the circuit court wrongly found that its inaction constituted bad faith despite no allegation or demonstration by Clarks of any intentional acts by the State in its destruction of the videos. Both of these are fact-bound inquiries that involve the application of what the State acknowledges is "settled law" to a specific set of facts. We have stated that when an appeal involves a mixed question of law and fact or an application of the law to the facts, it is not a proper appeal by the State. *See Short*, 2009 Ark. 630, at 4, 361 S.W.3d at 259.

9

Although the majority states that it is taking this opportunity to clarify the standard for courts to employ when the State loses or destroys evidence, this court has addressed evidence lost or destroyed by the State several times. *See, e.g.*, *Lee v. State*, 327 Ark. 692, 700–01, 942 S.W.2d 231, 235 (1997) (rejecting due-process claim in which Lee failed to show that blood evidence possessed any exculpatory value before its destruction or that the State acted in bad faith when the sample was destroyed during testing pursuant to "standard operating procedure"); *Wenzel v. State*, 306 Ark. 527, 533, 815 S.W.2d 938, 941 (1991) (rejecting due-process claim in which Wenzel "made no showing that the evidence possessed any exculpatory value before it was destroyed, as required by the first prong of the standard in [*California v.*] *Trombetta*, [467 U.S. 479 (1984),]" nor had he "alleged or proven bad faith on the part of the State, as required by *Arizona* [*v. Youngblood*, 488 U.S. 51 (1988)]"). I am therefore unconvinced that this State appeal involves more than the application of settled law to the facts of this case. In my view, the appeal does not involve the correct and uniform administration of the criminal law, and I would dismiss it. *See K.H.*, 2010 Ark. 172, at 7, 368 S.W.3d at 50.

Accordingly, I dissent.

BAKER and HUDSON, JJ., join.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellant.

*David R. Raupp*, Arkansas Public Defender Commission, for appellee.